615 So.2d 305 (1993)
Lynn W. DUNCAN
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 92-C-2174.
Supreme Court of Louisiana.
February 22, 1993.
*306 Roy Halcomb, Jr., Broussard, Bolton, Halcomb & Vizzier, Alexandria, for applicant.
Richard P. Ieyoub, Atty. Gen., Baton Rouge, Richard A. Bailley, Stephen J. Katz, Rankin, Yeldell, Herring & Katz, Bastrop, for the State.
KIMBALL, Justice.[*]
In this worker's compensation case, plaintiff, Lynn W. Duncan, appeals the lower courts' rulings that his award of supplemental earnings benefits could not be accelerated pursuant to La.Rev.Stat. 23:1333. The first issue presented concerns the criteria which must be satisfied for an employee to invoke § 1333 and accelerate payments of a worker's compensation award. The second issue concerns determination of the amount to be accelerated when the award grants disability benefits (i.e., benefits which are subject to modification or termination at an indeterminable time).

FACTS AND PROCEDURAL HISTORY
Plaintiff was an employee of the State of Louisiana, Department of Transportation and Development in August of 1984. At that time, he suffered a work-related accident which eventually caused him to leave his employment. On October 7, 1987, plaintiff filed suit against his employer seeking to recover worker's compensation benefits.
The trial court found plaintiff disabled from performing any type of work as a result of the work-related accident. Plaintiff was awarded, inter alia, supplemental earnings benefits ("SEB") pursuant to La. Rev.Stat. 23:1221(3).[1] The judgment of the trial court, insofar as it awarded SEB, provided,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, LYNN W. DUNCAN, and against the defendant, STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ordering defendant to pay to *307 plaintiff supplemental earnings benefits at the rate of TWO HUNDRED FORTY FIVE AND NO/00 ($245.00) DOLLARS PER WEEK for each weekly period from August 1, 1987, which payments are to be continued for so long as plaintiff continues to be disabled, subject to the statutory limitations which apply to the recovery of supplemental earnings benefits, together with legal interest from maturity of each weekly payment from its due date until paid;
On appeal, the second circuit affirmed the trial court's award of SEB. Defendant did not seek rehearing in the court of appeal or writs to this court, and the judgment became final on February 23, 1990. By letter dated March 1, 1990, plaintiff made demand upon defendant to pay the amounts awarded by the judgment. Despite the final judgment ordering defendant to pay and the written demand for payment, defendant made no payment nor took any action in the case.
On April 24, 1990, plaintiff filed a motion seeking, inter alia, acceleration of the SEB payments together with legal interest from maturity of each weekly payment. Plaintiff alleged that because defendant had failed to pay six successive installments as they became due, he was therefore entitled, under the provisions of La.Rev.Stat. 23:1333, to have the weekly SEB award accelerated to an immediate judgment against defendant for the maximum recovery period for SEB[2] at the rate of $245.00 per week. Additionally, plaintiff contended defendant had been arbitrary and capricious in failing to timely pay the benefits owed and, accordingly, he was entitled to receive a penalty of 12% on the total amount of his loss now due, together with reasonable attorney's fees, ostensibly under La.Rev.Stat. 23:1201(E).[3]
On May 23, 1990, 29 days after plaintiff filed the motion for acceleration, defendant paid plaintiff the sum of $35,595.00, which represented the back due benefits for the time period from August 1, 1987 through May 13, 1990. The payment did not include interest on the overdue weekly benefits. Thereafter defendant began paying and apparently has continued to pay weekly benefits.
On June 10, 1991 the trial court signed a judgment rejecting plaintiff's motion for acceleration holding that La.Rev.Stat. 23:1333, the acceleration provision, did not apply to SEB. The trial court further found the acceleration provision inapplicable to the State because its employees were adequately protected by the State's solvency. The court did find defendant liable for the 24% penalty of La.Rev.Stat. 23:1201(F) due to its arbitrary refusal to pay the weekly benefits, and further found defendant liable for attorney' fees under La.Rev. Stat. 23:1201.2.
On appeal, the second circuit held the trial court had erred in finding the acceleration provision inapplicable to SEB. The appellate court affirmed the lower court's decision, however, holding § 1333 inapplicable under the instant facts. 604 So.2d 614. In particular, the appellate court held § 1333 only applies when the employer is both uninsured and insolvent. In the present case, the court of appeal found the State was not insolvent and, moreover, that the State's "self-insured" status qualified it as an "insured" under the statute.[4]
We granted plaintiff's writ application[5] to consider the propriety of the appellate court's interpretation of § 1333.

*308 THE LAW
La.Rev.Stat. 23:1333 allows acceleration of worker's compensation benefits under certain circumstances. This statute provides:
If the employer against whom an award awarding compensation has been rendered becomes insolvent or fails to pay six successive installments as they become due, the installments not yet payable under the award shall immediately become due and exigible and the award shall become executory for the whole amount; but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue.
The first requisite element an employee must establish to invoke § 1333's acceleration provision is his "award awarding compensation" against the employer. This "award awarding compensation" element may be satisfied by the employee proving either an award based upon a non-disabling specific injury or an award based upon the disability of the employee. Lytell v. Strickland Transp. Co., Inc., 373 So.2d 138 (La. 1979). This is so even though an award based upon the disability of the employee is subject to modification or termination at a future indeterminable date.[6]Id., 373 So.2d at 140.
The second element in a § 1333 rule is the employer's "insolven[cy] or fail[ure] to pay six successive installments as they become due." Attributing a plain, literal meaning to the legislature's use of the disjunctive "or" in the quoted phrase, this court has observed that this element may be satisfied by proving either of the stated conditions. See, Johnson v. Continental Ins. Companies, 410 So.2d 1058 (La.1982) ("Generally, section 1333 provides two instances when installments not yet payable under the judgment may be accelerated when the employer becomes insolvent or fails to pay six successive installments as they become due." Id. at 1060. (Emphasis added.)).
In its briefs and in oral argument before this court, defendant argues against this literal construction of the unambiguous words of § 1333. Defendant argues that the purpose of § 1333 is to protect worker's compensation recipients from employer insolvency by giving the recipient, upon the insolvency of the employer, a claim for the full amount of his award which may then be asserted in the insolvency proceedings. Thus, defendant argues, that portion of § 1333 which allows acceleration based upon the employer's failure to pay six successive installments should be construed as merely creating a rebuttable presumption of insolvency. According to defendant, if the employer rebuts this presumption, the employee's acceleration action should be defeated.
While we agree, one purpose of § 1333 is to protect worker's compensation recipients from employer insolvency, we note that even were we to accept this as § 1333's sole purpose, we would still disagree with defendant's construction of that provision. Defendant's construction would impose upon an injured employee the heavy burdens of monitoring his employer's financial condition and proving the employer's insolvency in addition to establishing the employer's failure to pay for six successive weeks. To impose such heavy burdens upon an injured employee as the exclusive method of prevailing on a rule to accelerate benefits would certainly interfere with the overriding purpose of the worker's compensation laws, to protect employees injured in the course of their employment and to provide them a quick and effective avenue for relief. Thus, even were we to accept defendant's position on the purpose of the statute, we would still reject its construction of the statute (that an employer's failure to pay six successive installments as they became due merely creates a rebuttable presumption of insolvency). Rather, we would hold an employer's failure to pay six successive installments as they became due would create an irrebuttable presumption *309 of insolvency of the employer for purposes of§ 1333. This presumption alone would satisfy the second element of an employee's acceleration action.
We do not, however, rest our holding upon the foregoing narrow interpretation of § 1333 as this court has previously recognized another purpose of § 1333to protect worker's compensation recipients from recalcitrant employers. See, Lytell, supra, 373 So.2d at 140 ("[Section 1333] provides a penalty against the recalcitrant employer for non-payment of the executory judgment against him awarding weekly compensation to an employeethe employer who, despite definitive judicial determination of his liability, nevertheless still fails to pay weekly compensation benefits due to the work-injured employee."). Defendant's construction of § 1333 would allow a recalcitrant employer to continually delay payment of an injured employee's benefits for six week periods, only to defeat the employee's acceleration action by establishing its solvency. While it is true, a plaintiff in such a situation would be entitled to statutory penalties resulting from the employer's delinquency (La.Rev.Stat. 23:1201(E) & :1201(F)), these penalties only afford the employee relief for past delinquencies; they provide the employee no protection against an employer's repeated consistent and continuous failures to pay. Lytell, supra, 373 So.2d at 140, n. 3. Once an employer demonstrates his recalcitrance by willfully refusing to pay an employee's compensation benefits for six consecutive weeks, the employee should be allowed to collect the full amount of his award by acceleration.
Based on the foregoing, we reject defendant's argument that an acceleration action premised upon the employer's failure to pay six successive installments as they became due may be defeated by the employer establishing its solvency. Rather, we hold an employer's failure to pay six successive installments as they became due satisfies the second statutory element of an employee's acceleration action under § 1333.
Notwithstanding our conclusion that a § 1333 acceleration rule may be premised upon the failure to pay six successive installments as they became due, we have imposed an additional required showing when the rule is premised on that condition. Specifically, we have required a showing that the failure to pay resulted from a "willful refusal." See, e.g., Johnson v. Continental Ins. Companies, 410 So.2d 1058, 1062 (La.1982) ("The uniform interpretation of R.S. 23:1333 ... compels a conclusion that section 1333 should not apply to a situation where there [is] no `willful refusal' to pay."). See also, Crawford v. T. Smith & Son, 183 La. 103, 162 So. 814 (1935); Mason v. Costanza, 166 La. 323, 117 So. 240 (1928). Thus, it is not enough for an employee to merely establish the employer's failure to pay six successive installments as they became due. Rather, the employee must also show that the employer's failure to make the payments resulted from a willful refusal.
The third element in a § 1333 rule is the existence of "installments not yet payable under the award." This element simply requires that the plaintiff have a potential entitlement to future payments under the award at the time the motion for acceleration is filed.[7] In the case of disability benefits, a showing by the employee that he has not yet received the maximum number of weekly installments payable under the award satisfies this burden. Lytell, supra, 373 So.2d 138. It then becomes incumbent upon the defendant to show, under the statutory limitations which apply to disability benefits,[8] that plaintiff is not *310 entitled to the maximum number of payments. That is, to avoid a judgment accelerating the maximum number of weekly benefit payments, the defendant must show that plaintiff's entitlement to disability benefits has terminated or will terminate with a certain determinable number of payments less than the maximum number of payments. "In the absence of such a showing at the time the penalty is sought to be invoked, the mandatory penalty provided by the statute is applicable for the `whole amount of the judgment' ..., not for a lesser period." Id., 373 So.2d at 144.
Regarding the dollar amount of the payments to be accelerated, La.Rev.Stat. 23:1221(3)(a) calls for a re-determination of SEB on a month-by-month basis.[9] When the SEB award is being accelerated pursuant to § 1333, however, unless the defendant establishes at the trial of the acceleration rule that the plaintiff is entitled to an amount less than that set for the month immediately preceding the acceleration rule (i.e., that the plaintiff is no longer disabled or that his disability has diminished such that he is presently entitled to a certain determinable amount less than the amount set for the month immediately preceding the acceleration action), the weekly benefit amount determined for that immediately preceding month will be used in determining the accelerated amount due. Lytell, supra, 373 So.2d at 144.
The fourth and final element in a § 1333 action is that the employee is not "adequately protected by insurance and receiv[ing] payments thereunder." This element precludes an employee, who is receiving worker's compensation payments from an insurer, from bringing a rule to accelerate the award upon the insolvency of his employer. As we held in Dixon v. King, 178 La. 1, 150 So. 385 (1933), this fourth element "has reference only to the case where the employer becomes insolvent, and not to the case of a failure to pay six successive installments as they become due." Id., 150 So. at 386. Indeed, if the employee who is protected by insurance is "receiv[ing] payments thereunder," he would be unable to establish the "fail[ure] to pay six successive installments as they [became] due."
Defendant again argues against this literal interpretation of § 1333, contending it is not intended to punish an insurer's willful refusal to pay compensation benefits and, hence, the acceleration provision may only be invoked if the employer is uninsured. We fail to find any support for defendant's position in the unambiguous terms of the preclusive proviso. The proviso provides in full, "but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue." (Emphasis added). If the mere presence of insurance was intended to preclude *311 an acceleration action regardless of whether the employee was receiving payments under the insurance, it is inexplicable why the words "and receives payments thereunder" are stated as a requisite of the proviso. In any event, § 1333 is clear and unambiguous, and its application as written does not lead to absurd consequences. In such a case, "the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9. Accordingly, we hold that the mere presence of insurance does not preclude an employee from pursuing a rule to accelerate benefits; rather, the employee must be protected by insurance and receiving payments thereunder as required by the statute.[10]

APPLICATION OF THE LAW TO THE FACTS
In the instant case, plaintiff established at the trial of the motion to accelerate that he had previously been awarded supplemental earnings benefits. Because supplemental earnings benefits are a category of disability benefits, La.Rev.Stat. 23:1221, plaintiff's award of supplemental earnings benefits satisfies § 1333's "award awarding compensation" requirement.
Plaintiff further established that his award of SEB became final on February 23, 1990 and he made a demand for payment on the defendant on March 1, 1990. Despite this final judgment and demand, defendant made no payments nor took any other action in the matter until well after plaintiff filed for acceleration on April 24, 1990 (i.e., after having missed more than six successive installments). At the hearing on the motion to accelerate, the trial court found this delay in making payments was due to nothing other than "counsel's press of business." This failure to pay six successive installments as they became due simply because of "counsel's press of business" satisfies both the second statutory element of plaintiff's § 1333 rule as well as this court's requirement that the failure to pay be a "willful refusal." Compare Lytell, supra, with Johnson, supra.
Regarding the third element of his acceleration action, plaintiff established that he had not received the maximum number of payments under the award; that is, that there remained "installments not yet payable under the award." At that point, in order for defendant to avoid a judgment against him for the maximum number of weekly payments, it was necessary for it to establish that plaintiff's entitlement had already terminated or would terminate at a future determinable date earlier than the maximum recovery period. Defendant failed to make this showing and, hence, the maximum number of weekly payments should be used in calculating the accelerated amount due. Defendant also failed to establish that plaintiff is entitled to a weekly amount less than that determined in the month immediately preceding the acceleration rule. Hence, the weekly amount due immediately preceding the acceleration rule ($245.00) should be used in determining the accelerated amount due.
Although defendant failed to make either of the above showings in the trial court, defendant alleged for the first time in this court that plaintiff retired prior to trial of the rule and hence his right to SEB terminated under La.Rev.Stat. 23:1221(3)(d)(iii) and the terms of the initial SEB award. Based on this alleged termination of plaintiff's SEB entitlement, defendant argues, this writ application has become moot by operation of law and, accordingly, should be dismissed. Alternatively, defendant argues, it had no notice of plaintiff's retirement prior to trial and hence the matter should be remanded to the trial court for an evidentiary hearing on plaintiff's continued entitlement to SEB.
We reject defendant's arguments. As discussed above, plaintiff established the existence of "installments not yet payable under the award," and defendant failed to rebut this element of plaintiff's case. Defendant's subsequent discovery of evidence *312 which might have rebutted plaintiff's showing, i.e., plaintiff's receipt of retirement benefits,[11] did not render this matter moot "as a matter of law." Furthermore, although a case may be remanded for introduction of additional evidence, this power must be exercised sparingly, limited to cases wherein the evidence was unobtainable with due diligence for the first trial and the record reflects that the new evidence is likely to affect the outcome of the case. Herbert v. Travelers Indemnity Co., 255 La. 645, 232 So.2d 463 (1970). In the instant case, defendant failed to show that evidence of plaintiff's receipt of retirement benefits from defendant "was unobtainable with due diligence for the original trial." Id., 232 So.2d at 465. Accordingly, defendant is not entitled to a remand of this case for introduction of further evidence.
Finally, because plaintiff is pursuing this acceleration action based upon defendant's failure to pay six successive installments as they became due, under both this court's interpretation of § 1333 in Dixon, supra, as well as a simple reading of § 1333, the preclusive proviso contained in the final clause of that section is not applicable.

CONCLUSION
Based on the foregoing, we conclude plaintiff's acceleration rule was improperly rejected by the lower courts. Accordingly, we reverse the judgments of the lower courts and remand this matter to the trial court for entry of a judgment in favor of plaintiff in accordance with this opinion.
REVERSED, AND REMANDED.
MARCUS, J., concurs and assigns reasons.
LEMMON, J., concurs for the reasons assigned by MARCUS, J.
MARCUS, Justice (concurring).
I agree with the majority's holding that the language of La.R.S. 23:1333 allows an employee to accelerate payment of a worker's compensation award upon showing the failure to pay six successive installments. I note, however, that the probable intent of this statute was to apply only to uninsured insolvent employers and was not meant to impose a penalty on a solvent employer (such as the state) for failure to make six consecutive payments. Rather, failure to make six consecutive payments simply provides evidence of insolvency. See Johnson v. Continental Ins. Co., 410 So.2d 1058 (Lemmon, J. concurring). Nonetheless, the unambiguous language of the statute compels a different result. Any change in this regard addresses itself to the legislature.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Ortique, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, et al., 615 So.2d 285, decided on this date.
[1] Plaintiff's claims for temporary-total and permanent-total disability compensation benefits were found to have prescribed.
[2] La.Rev.Stat. 23:1221(3)(d) fixes the absolute maximum recovery period for SEB at 520 weeks.
[3] Because payment was due under a final judgment, La.Rev.Stat. 23:1201(F) which provides for a 24% penalty was applicable rather than La.Rev.Stat. 23:1201(E) which applies to arbitrary refusals to pay worker's compensation when there is no final judgment.
[4] Because our interpretation of § 1333 is different from that of the court of appeal, we do not reach that court's conclusion that the State's "self-insured" status made it an "insured" under the statute. We note in passing, however, this court has repeatedly held that "self insurance" is not "insurance." See, e.g., Bowens v. General Motors Corp., 608 So.2d 999 (La.1992); Jones v. Henry, 542 So.2d 507 (La.1989).
[5] 607 So.2d 546 (La.1992).
[6] See La.Rev.Stat. 23:1221(3)(a) (calling for a re-determination of the amount of SEB on a month-by-month basis), and La.Rev.Stat. 23:1221(3)(d) (allowing termination of SEB payments upon the occurrence of certain events). See also further discussion, infra.
[7] The entitlement is only potential because the benefit entitlement may be modified or terminated in the future.
[8] La.Rev.Stat. 23:1221(3)(d) provides:

(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
(i) As of the end of any two-year period commencing after termination of temporary total disability, unless during such two-year period supplemental earnings benefits have been payable during at least thirteen consecutive weeks; or
(ii) After receipt of a maximum of five hundred twenty weeks of benefits, provided that for any week during which the employee is paid any compensation under this Paragraph, the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this Paragraph; however, for any week during which the employee is paid no supplemental earnings benefits, the employer shall not be entitled to a reduction against the maximum number of weeks payable under this Paragraph; or
(iii) When the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
[9] La.Rev.Stat. 23:1221(3)(a) provides:

(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at the time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(Emphasis added.)
[10] Because we conclude the mere presence of insurance does not preclude a § 1333 action, we do not reach defendant's argument that its status as "self-insured" makes it an "insured" under the statute.
[11] The parties dispute whether plaintiff's mere receipt of retirement benefits brings him within the ambit of § 1221(3)(d)(iii). Because we conclude defendant failed to timely raise plaintiff's receipt of retirement benefits, we do not reach the dispute regarding what constitutes "retire[ment]" as used in that statute.