JiTHIBODEAUX, Judge.
In this appeal, Dale Mark Briscoe asks us to grant assorted relief. Chief among his requests is that we accelerate compensation benefits under La.R.S. 23:1333. Jerry’s Furniture Mart, Briscoe’s pre-injury employer, calls upon us to determine whether its obligations under a prior judgment by this court are satisfied |2by an examining physician’s report. For the following reasons, we grant the relief sought by Briscoe.

FACTS

Briscoe’s First Claim
On September 9, 1991, Mark Dale Briscoe sustained lower back and neck injuries in an accident that occurred while Briscoe labored as a deliveryman for Jerry’s Furniture Mart (Jerry’s). On September 23, 1991, Jerry’s commenced paying Briscoe $132.61 each week in temporary total disability (TTD) benefits, but Jerry’s terminated such benefits on February 17, 1992. Further, Jerry’s refused to pay all medical expenses incurred after December 20, 1991 unless and until Briscoe paid such expenses first and later sought reimbursement from Jerry’s.
On February 25,1992, Briscoe filed a claim with the Office of Worker’s Compensation (OWC). Briscoe maintained that he was entitled to receive benefits beyond Jerry’s February 17, 1992 termination date. Moreover, Briscoe alleged that Jerry’s practice of forcing claimant to seek medical expense reimbursement was improper. Briscoe asked the OWC to:
(1) terminate Jerry’s medical expense reimbursement practices;
' (2) recommence claimant’s weekly benefits (awarding legal interest upon each payment from its due date until paid); and,
(3) award attorney’s fees and penalties on account of Jerry’s burdensome reimbursement practices and its arbitrary and capricious termination.
On April 30,1993, the OWC awarded Briscoe $132.61 each week in continuing TTD benefits from February 18, 1992 (Jerry’s TTD termination date) until “claimant is able to engage in employment or self-employment.” The OWC Isgranted Briscoe both legal interest and a twelve percent (12%) penalty assessed upon all past-due benefits until paid. Likewise, Jerry’s was ordered to pay Briscoe’s medical expenses as well as legal interest and a twelve percent (12%) penalty assessed upon all medical bills due until paid. Contingent upon claimant’s ability to document such expenses, the OWC also *767 awarded Briscoe $0.24 per mile for travel expenses incurred in visiting the offices of medical professionals who treated Briscoe’s work-related injuries. Finally, the OWC terminated Jerry’s reimbursement practices and awarded claimant $3,500.00 in attorney’s fees on account of Jerry’s arbitrary and capricious handling of Briscoe’s claim. Jerry’s appealed suspensively and Briscoe appealed devolu-tively from the OWC’s judgment. In Briscoe v. Jerry’s Furniture, 93-1030 (La.App. 3 Cir. 04/06/94); 635 So.2d 550, this court in every respect, affirmed the OWC’s decision upon Briscoe’s first claim.[1]
Briscoe’s Second Claim
On November 5,1993 (i.e. 5 months before we rendered judgment upon review of Bris-coe’s first claim), Briscoe filed a second claim for benefits with the OWC. He alleged that nearly three months after the OWC rendered its first decision, doctors advised Briscoe to undergo neck surgery. Claimant maintained that Jerry’s “did nothing” in response to Briscoe’s notice of surgery; that is, Jerry’s neither contested (by requesting a second opinion or an independent medical examination) nor authorized claimant’s surgery. Briscoe sought a second OWC judgment ordering Jerry’s to: (1) authorize Briscoe’s surgery; (2) pay Briscoe’s ambulance, physician, hospital, & prescription expenses; and, (3) pay attorney’s fees, penalties, and interest |4on account of the employer’s arbitrary and capricious handling of this portion of Bris-coe’s claim.
In January 1994, Jerry’s contested Bris-coe’s surgery by requesting an IME and, after due delays, the OWC appointed Dr. James R. LaFleur to examine claimant. During the March 1, 1994 examination, Bris-coe complained that he suffered persistent headaches and neck pain (commonly radiating to the level of both shoulder blades) on account of the September, 1991 accident. LaFleur performed both X-rays and an MRI of the cervical spine. X-rays revealed that the cervical spine was “within normal limits” while MRI results exposed “a C5-6 minimal bulge.” In his report filed with the OWC on March 11,1994, Dr. LaFleur concluded:
I do not feel that the patient’s complaints can be explained with the minimal findings on the cervical MRI. With such minimal findings on the MRI, I would recommend that this patient be allowed to return to his pre-injury work duties.
Based upon LaFleur’s findings, Jerry’s resolved that surgery was unnecessary and that, in order to discharge its continuing obligation to provide Briscoe with TTD benefits (as per our April 6, 1994 affirmance), Jerry’s need only pay TTD benefits for the period between February 18, 1992 (Jerry’s TTD termination date) and April 25, 1994 (the week before our judgment became final). Accordingly, by May 11, 1994, Briscoe received a one-time lump-sum payment from Jerry’s in the amount of $22,938.84.[2] After the May 11th draft was tendered, Jerry’s refused to pay further |5indemnity benefits on account of Dr. LaFleur’s report; in this manner, Jerry’s contravened that portion of our April 6, 1994 judgment awarding Briscoe continuing TTD benefits.
Briscoe’s Third Claim
On July 28, 1994, Briscoe petitioned the OWC to: (1) accelerate claimant’s TTD benefits under La.R.S. 23:1333; and, to (2) grant additional statutory penalties under La.R.S. 23:1201(F). By order dated October 25, 1994, the OWC consolidated Briscoe’s second (petition seeking surgery approval) and third *768 (petition for accelerated benefits and statutory penalties) claims.
With financial assistance from medicaid, Briscoe underwent neck surgery in March, 1995. That same month, Jerry’s “voluntarily” began paying TTD benefits after learning of Briscoe’s surgery. On July 27,1995, Bris-coe’s consolidated claims came for trial; therein, the OWC considered whether:
(1) Briscoe’s surgery was reasonable and necessary;
(2) Briscoe was entitled to receive compensation benefits between January 1994 and March 1995;
(3) Briscoe was entitled to continuing compensation benefits and, if so, which category of benefits were due;
(4) Jerry’s should pay Briscoe’s ambulance, physician, hospital, & prescription expenses; and whether
(5) attorney’s fees & penalties should be assessed against Jerry’s.
On November 1,1995, the OWC ruled in Briscoe’s favor. Jerry’s was ordered to pay $131.00 in weekly compensation benefits from January 1994 to March 161995 and beyond—i.e. such benefits were continued until Briscoe “[was] able to engage in employment for wages or self-employment.” Likewise, the OWC ordered Jerry’s to pay both claimant’s medical and surgical expenses. Contingent upon Briscoe’s ability to document such expenses, the OWC again awarded claimant $0.24 per mile for traveling expenses incurred. Finally, Jerry’s was ordered to pay $2,500.00 in attorney’s fees and a twelve percent (12%) penalty assessed upon all unpaid compensation benefits due from January 1994 to March 1995. Briscoe appeals the OWC’s judgment insisting that the hearing officer erred in:
(1) failing to address whether claimant’s TTD benefits should have been accelerated under La.R.S. 23:1333;
(2) awarding inadequate attorneys fees;
(3) failing to address whether additional statutory penalties should have been assessed under La.R.S. 23:1201(F); and
(4) tabulating the amount of weekly benefits owed.
Likewise, Briscoe urges us to award additional attorney’s fees for claimant’s prosecution and defense of this appeal. In its sus-pensive appeal, Jerry’s contends that the OWC erred in:
1) finding Briscoe’s surgery to be reasonable and necessary;
2) ruling that Briscoe’s ambulance, prescription, and hospital expenses were related to claimant’s September 1991 accident;
3) concluding that Briscoe proved (by clear and convincing evidence) that he remained disabled between January 1994 and March 1995;
4) ordering Jerry’s to pay continuing TTD benefits until Briseoe “is able to engage in gainful employment for wages or self-employment;”
5) granting a twelve percent (12%) penalty upon Briscoe’s TTD benefits unpaid between January 1994 and March 1995; and
176) awarding attorney’s fees for Jerry’s alleged failure to ascertain the nature of Briscoe’s injuries before terminating claimant’s benefits.
Though Jerry’s enunciated the foregoing assignments in brief, the company failed to fashion arguments upon any of the errors alleged; instead, Jerry’s brief is a response to the arguments made in Briscoe’s appeal under our docket No. 96-139. The brief does not address any of the assignments advanced in Jerry’s appeal under docket No. 96-70. Accordingly, each assignment asserted by Jerry’s is abandoned. The company’s appeal is dismissed pursuant to Rule 2-8.6 of the Uniform Rules—Courts of Appeal.

LAW & DISCUSSION

Briscoe Is Entitled To Receive Accelerated Benefits
Louisiana Revised Statute 23:1333 provides:
If the employer against whom an award awarding compensation has been rendered becomes insolvent or fails to pay six successive installments as they become due, the installments not yet payable under the *769 award shall immediately become due and exigible and the award shall become execu-tory for the whole amount; but if the employee or his dependent is adequately protected by insurance and receives payments thereunder this right shall not accrue.
When an employer fails to pay a judgment awarding weekly compensation, La.R.S. 23:1333 penalizes the recalcitrant employer by making all weekly compensation payable under the judgment immediately due and exigible. Lytell v. Strickland Transp. Co., Inc., 373 So.2d 138 (La.1979). All claimants seeking accelerated benefits thereunder must establish:
(1) the existence of an award awarding compensation against the employer;
(2) that the employer is either insolvent or has [willfully] refused to pay six successive installments as they have become due;
|8(3) the existence of installments not yet payable under the award; and
(4) that the employee is not adequately protected by insurance and is not receiving payments thereunder.
Duncan v. State Dep’t of Transp. & Dev., 615 So.2d 305 (La.1993); Eglin v. United Gas Pipeline, 95-721 (La.App. 3 Cir. 01/24/96); 670 So.2d 250.
Compensation Award
In Duncan, 615 So.2d at 308, the Supreme Court observed:
The first requisite element an employee must establish to invoke § 1333’s acceleration provision is his award awarding compensation against the employer. This award awarding compensation element may be satisfied by the employee proving either an award based upon a non-disabling specific injury or an award based upon the disability of the employee. This is so even though an award based upon the disability of the employee is subject to modification or termination at a future indeterminable date.
Undoubtedly, our judgment rendered April 6, 1994 condemned Jerry’s to pay compensation benefits on account of Briscoe’s temporary total disability. Claimant’s first burden is met.
Willful Refusal to Pay Six Successive Installments
Concerning the second § 1333 burden, the Duncan court remarked:
The second element in a § 1333 rule is the employer’s “insolvency or failure to pay six successive installments as they become due.” Attributing a plain, literal meaning to the legislature’s use of the disjunctive “or” in the quoted phrase, this court has observed that this element may be satisfied by proving either of the stated conditions.
615 So.2d at 308 (original emphasis).
Our courts have imposed an additional requirement upon claimants who charge that an employer failed to pay six successive installments — viz., such | gdaimants must show that the employer “willfully refused” to pay the employee’s benefits. See Duncan, 615 So.2d 305; Eglin, 670 So.2d at 255.
To satisfy his two-fold burden, Bris-coe first avers that Jerry’s failed to pay weekly TTD benefits from April 26, 1994 to July 28, 1994[3] — a period that spans roughly 13 weeks. As evidence of Jerry’s “willful refusal” to pay such benefits, Briscoe declares that on:
April 25, 1994 Briscoe notified Jerry’s that, pursuant to this court’s judgment rendered April 6, 1994, TTD benefits were due each week in the amount of $132.61;
May 11, 1994 Briscoe again notified Jerry’s that weekly TTD benefits were due pursuant to our judgment.
June 20,1994 Jerry’s was advised, during the parties’ Rule to Show Cause hearing, that Briscoe had not received TTD benefits following the employer’s one-time payment of $22,-938.84.
*770 Further, this court’s records disclose that on April 7, 1994, Jerry’s received our judgment ordering the employer to provide Briscoe with continuing TTD benefits. “[WJhere an employer has been condemned by final judgment to pay an employee weekly compensation and subsequently repudiates th[at] obligation by refusing to pay on demand,” Johnson v. Continental Ins. Co., 410 So.2d 1058, 1061 (La.1982), such refusal must be considered willful, absent the employer’s showing of administrative mischance, see 410 So.2d 1058, that the employee was no longer disabled at the time he sought to invoke the penalty, see Dixon v. King, 178 La. 1, 150 So. 385 (1933), or that the employer did offer to make the payments when due. See Mason v. Costanza, 166 La. 323, 117 So. 240 (1928).
| ípCiting language from Dr. LaFleur’s IME report, Jerry’s contends that (like the Dixon claimant) Briscoe was no longer entitled to receive TTD benefits when he sought accelerated benefits on July 28, 1994. Jerry’s argument stems from its apparent belief that Dr. LaFleur’s findings automatically ousted the company’s obligation to provide continuing TTD benefits under our final judgment. We disagree.
Dr. LaFleur filed Briscoe’s IME results were filed with the OWC on March 11, 1994; whereas, our decision to affirm the OWC’s order of continuing TTD benefits was rendered on April 6, 1994, and became final on May 6,1994. Within fourteen days of our mailing of the notice of judgment, Jerry’s could have properly petitioned this court for a rehearing. La.Code Civ.P. art. 2166. Likewise, within thirty days of such mailing, Jerry’s could have applied to the supreme court for a writ of certiorari. Id. Jerry’s utter failure to take either action caused Briscoe’s rights to vest in our final judgment, a judgment which entitled Briscoe to receive continuing TTD benefits. Dr. LaFleur’s report did not ipso facto divest Briscoe of the right to receive continuing TTD benefits under our judgment.
We reject Jerry’s assertion that Bris-coe was not entitled to receive TTD benefits on July 28, 1994; accordingly, we find willful Jerry’s refusal to provide such continuing benefits. Claimant satisfies both facets of our inquiry upon this second acceleration element.
Installments Not Yet Payable Under The Award
Regarding claimant’s third burden, the Duncan court observed:
The third element in a § 1333 rule is the existence of “installments not yet payable under the award.” This element simply requires that the plaintiff have a potential entitlement to future payments under the award at the time the motion for acceleration is filed. In the case of disability benefits, a showing \ uby the employee that he has not yet received the maximum number of weekly installments payable under the award satisfies this burden. It then becomes incumbent upon the defendant to show, under the statutory limitations which apply to disability benefits, that plaintiff is not entitled to the maximum number of payments. That is, to avoid a judgment accelerating the maximum number of weekly benefit payments, the defendant must show that plaintiffs entitlement to disability benefits has terminated or will terminate with a certain determinable number of payments less than the maximum number of payments. In the absence of such a showing at the time the penalty is sought to be invoked, the mandatory penalty provided by the statute is applicable for the whole amount of the judgment, not for a lesser period.
615 So.2d at 309 (citations omitted) (footnotes omitted) (emphasis ours).
As hereinbefore stated, our previous judgment on this matter became final on May 6, 1994; accordingly, plaintiff properly discharges his burden by claiming that on July 28, 1994 (the date of Briscoe’s judicial demand for accelerated benefits), our previous award potentially entitled Briscoe to receive future TTD payments. Yet, because claimant’s disability is temporary total, the number of installments to which Briscoe is potentially entitled is not limited under La.R.S. 23:1221(1); instead, claimant is entitled to receive weekly benefits so long as he remains *771 unable to engage in employment or self-employment. “Clearly, this does not provide an easily discernible period of benefits for purposes of acceleration pursuant to La.R.S. 23:1333.” Eglin, 670 So.2d at 256. In lieu of a statutory ceiling, Briscoe urges us to accelerate TTD benefits up to his 65th (retirement age) birthday. Briscoe’s “retirement age” theory was lodged verbatim and rejected by this court in Eglin. We observed in Eglin:
To award total temporary disability benefits to age sixty-five to Eglin would be the equivalent of converting his judgment to one of total permanent disability. We do not believe this to be an equitable solution, nor one intended by the legislature in providing for this penalty in a TTD benefits ease. Therefore, we ... find that [this ease] must be remanded for an evidentiary hearing on the limited issue of the maximum number of weeks it l^will take for Eglin to be released by his treating physician to go back to work.

Id.

Accordingly, we, too, remand Bris-coe’s case for an evidentiary hearing on the limited issue of the maximum number of weeks it will take for him to be released by his treating physician to go back to work; thereafter, Briscoe’s benefits must be accelerated from April 25, 1994 until the date set forth by claimant’s physician.
Employee Is Not Adequately Protected By Insurance
This fourth and final element does not apply to Briscoe’s claim for accelerated benefits since the Duncan court observed:
This element precludes an employee, who is receiving worker’s compensation payments from an insurer, from bringing a rule to accelerate the award upon the insolvency of her/his employer. [T]his fourth element has reference only to the ease where the employer becomes insolvent, and not to the ease of a failure to pay six successive installments as they become due. Indeed, if the employee who is protected by insurance is receiving payments thereunder, he would be unable to establish the failure to pay six successive installments as they became due.
615 So.2d at 310 (citations omitted).
Accordingly, Briscoe’s arguments upon this element are both unavailing and inappo-site.
Attorney’s Fees
Briscoe’s argument upon attorney’s fees is two-fold. First Briscoe insists that the OWC’s $2,500.00 attorney’s fee award was insufficient; therefore, he requests that we increase said award to $7,000.00. Second, Briscoe asks that we grant additional attorney’s fees for his prosecution and defense of this appeal.
I ^Louisiana Revised Statute 23:1201.2 permits worker’s compensation claimants to secure attorney’s fees only if the employer or insurer acted arbitrarily, capriciously or without probable cause in refusing to pay or terminating benefits. The OWC’s attorney’s fee determination is clearly a question of fact that should not be amended or reversed unless clearly wrong. See Lolan v. Louisiana Indus., 95-602 (La.App. 3 Cir. 11/2/95); 664 So.2d 616 (citing Scott v. Central Indus., Inc., 602 So.2d 201 (La.App. 3 Cir.1992). We have carefully reviewed the record, in light of the well-established jurisprudence, and find error in the hearing officer’s attorney’s fee award.
Claimant notes that the OWC, in its prior decision rendered April 30,1993, granted Briscoe $3,500.00 in attorney’s fees. Claimant avers, and the record reflects, that the current proceeding required much more work than the first—viz., in this proceeding, four physicians’ depositions were taken, several motions and pretrial memoranda were drafted, numerous court appearances were made commensurate with the parties’ motions, and claimant spent $2,613.14 in costs alone. Upon these findings, we now increase Briscoe’s attorney’s fee award to $5,000.00.
Insofar as Briscoe’s second request that we grant additional attorney’s fees upon appeal, we observe that an increase in attorney’s fees is granted when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of plaintiffs attorney, provided that claimant *772 requests such an increase. George v. M & G Testing & Serv., Inc., 95-31 (La.App. 3 Cir. 7/19/95); 663 So.2d 79. In this case, Jerry's has unquestionably obtained no relief upon its appeal, and a review of the additional work necessitated by this appeal reveals that a $2,000.00 attorney’s fee award is warranted.
| ^Briscoe Is Entitled To Penalties Under La.R.S. 23:1201(F)
During the proceedings below, Briscoe implored the OWC to grant penalties under La.R.S. 23:1201(F) which, before June 29, 1995, read:
If any compensation or medical benefits payable under the terms of a final, nonap-pealable judgment is not paid within thirty days after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty-four percent thereof or one hundred dollars per day, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless the order is appealed as provided by law or unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this subsection shall be included in any formula utilized to establish premium rates for worker’s compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.
Briscoe contends that the OWC erred in failing to grant relief under the foregoing provision. We concur.
Our April 6th judgment became final on May 6,1994. Section 1201(F)’s thirty-day grace period ended on June 5, 1994. Jerry’s did not appeal and we have already refuted the company’s reason (ie. Dr. LaFleur’s IME findings) for failing to pay Briscoe continuing TTD benefits; therefore, we find that the OWC erred in not assessing penalties under La.R.S. 23:1201(F). The incontrovertible fact is that from June 1994 until March 1995, Jerry’s refused to pay the TTD benefits ordered by our judgment. See Meche v. Foremost Management Corp., 95-238 (La.App. 3 Cir. 10/4/95); 663 So.2d 325. We now grant Briscoe’s request for a $3,000.00 penalty under La.R.S. 23:1201(F).
Amount Of Weekly Benefits Due
The OWC’s judgment ordered Jerry’s to pay $131.00 in weekly TTD benefits. Briscoe contends, and we concur, that the OWC erred in tabulating the |iSamount due. We now hold that Jerry’s owes $132.61 in weekly TTD benefits. The OWC’s judgment is hereby amended to reflect this holding.

CONCLUSION

For the foregoing reasons, we grant Bris-coe’s request for accelerated benefits, but remand the cause for an evidentiary hearing upon the limited issue of the maximum number of weeks it will take for claimant to be released for work by his treating physician. The OWC’s grant of $2,500.00 in attorney’s fees is doubled to $5,000.00; likewise, we grant Briscoe $2,000.00 in attorney’s fees for the prosecution and defense of this appeal. We also grant $3,000.00 in statutory penalties under La.R.S. 2S:1201(F). Finally, the OWC’s judgment is amended to reflect that Jerry’s owes $132.61 in weekly TTD benefits. We affirm the OWC’s judgment in all other respects.
All costs are assessed against Jerry’s Furniture Mart, Inc.
AMENDED IN PART AND, AS AMENDED, AFFIRMED; REVERSED IN PART AND REMANDED.

. Neither party petitioned this court for a rehearing, nor sought supervisory writs from the supreme court.

. According to Jerry’s, its payment comprised the following:
TTD benefits from 02/18/92 to 03/01/94 $14,034.54
interest upon TTD benefits $ 1,074.66
SEB from 03/02/94 to 04/25/94 $ 1,012.50
interest upon SEB $ 10.26
attorney’s fees $ 5,000.00
penalties $ 1,806.88
TOTAL $22,938.84
** Jerry's purportedly paid SEB beginning March 2, 1994 because, according to Jerry's, the sus-pensive condition — that Briscoe receive TTD benefits “until he is able to engage in employment for wages or self-employment — was fulfilled on that date.

. Though Jerry’s didn't recommence paying TTD benefits until March of 1995, the operative date (for purposes of assessing the "six successive installment” requirement) is the date upon which Briscoe's acceleration petition was filed.