692 So.2d 1316 (1997)
Norris BAUDOIN, Plaintiff-Appellant/Appellee,
v.
VERMILION PARISH SCHOOL BOARD, Defendant-Appellant.
No. 96-1604.
Court of Appeal of Louisiana, Third Circuit.
April 2, 1997.
Writ Denied June 20, 1997.
James Isaac Funderburk, Abbeville, for Norris Baudoin.
Calvin E. Woodruff Jr., Abbeville, for Vermilion Parish School Bd.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
DOUCET, Chief Judge.
Defendant, Vermilion Parish School Board (VPSB), appeals a judgment of the district *1317 court awarding plaintiff, Norris Baudoin, $11,037.50 for 73.5 days of unused vacation and/or compensatory time plus interest, attorney's fees of $4,405.71, and costs. Plaintiff answers the appeal seeking penalties on the award under La.R.S. 23:632, an increase in attorney's fees, and a fixed sum of court costs.

ACTION IN THE TRIAL COURT
This case was decided based on stipulations and evidence entered into the record. The trial judge summed up the facts as follows:
Plaintiff instituted this suit to recover payment for vacation time that he had accrued prior to retirement from his employment with VPSB. The parties stipulated to all of the facts that are [sic] govern the determination of this matter.
Mr. Baudoin became employed with the school board on October 28, 1975, he retired from the school board on November 11, 1995. On December 20, 1991 Mr. Baudoin became maintenance manager and stayed in this position until his retirement.
During Mr. Baudoin's employment with the school board there were three (3) annual leave policies in effect that were applicable to him. The first policy [which] became effective in July, 1982 provided the annual leave policy for twelve-month employees. (See Joint Exhibit 1). The second policy amended the 1982 policy to allow twelve-month employees to accumulate unlimited annual leave. (See Joint Exhibit 2).
On January 9, 1992, the annual leave policy for twelve month management personnel was amended to provide that an employee could only use forty (40) days annual leave in a school year unless he or she had accumulated 100 days of annual leave prior to the effective date of the policy. Where an employee had accumulated 100 hours [sic] of annual leave he or she could use up to fifty (50) days annual leave during the school year. At the time this policy went into effect, Mr. Baudoin had accrued 125 days annual leave. (See Joint Exhibit 3).
Undoubtedly the 1992 policy change had a negative impact on Mr. Baudoin. It is undisputed that he continued to accrue annual leave, as long as he was employed with the school board. Pursuant to the policies described above, he continued to accrue annual leave at the rate of 1½ days per month or 18 days annually. The 1992 policy limited his use of his accrued annual leave. The court calculates that even without the accrual and use of comp time, Mr. Baudoin would have had 24 days unused accrued annual leave at the time of his separation from the school board. This figure was calculated as follows:

1992 125 days annual leave accrued
 - 50 days maximum use of annual leave
 ____
 75 days annual leave remaining
 + 18 days annual leave accrued 1992
 ____
1993 93 days annual leave accrued
 - 40 days maximum use of annual leave
 ____
 53 days annual leave remaining
 + 18 days annual leave accrued 1993
 ____
1994 71 days annual leave accrued
 - 40 days maximum use of annual leave
 ____
 31 days annual leave remaining
 + 18 days annual leave accrued 1994
 ____
 49 days annual leave
1995 - 40 days maximum use of annual leave
 9 days annual leave remaining
 + 15 days annual leave accrued 1995
 ____
 24 days annual leave remaining at retirement

The learned trial judge then went on to analyze the effect the several policy changes had on Mr. Baudoin stating as follows:
It is clear from this calculation that the school board's policy change in 1992 resulted in Mr. Baudoin losing 24 days of annual leave that had accrued to him prior to the change in policy. The school board cannot allow an employee to accumulate annual leave and then change its policy, so that the employee forfeits what he or she accumulated prior to the change in policy. Berteau v. Wiener Corp., 362 So.2d 806 (La.App. 4 Cir.1978); Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University, 591 So.2d 690 (La.1991).
A distinction has been made by the parties between annual leave and comp time. Defendant does not allow management personnel to accrue comp time. [There was a stipulation between the parties that] Mr. Baudoin would have testified that he was not informed of this fact when he became a member of management personnel.

*1318 There was no distinction made by the parties as to what, if any, impact the comp time accrual and/or usage had on the annual leave that had accrued to 125 days as of institution of the January, 1992 policy. However, the [court's] calculation clearly reveals that the remainder of this dispute centers around the accrual and use of comp time, as there is a difference of 49.5 days of annual leave between the amount claimed by Mr. Baudoin and the amount resulting from the calculation.
Pursuant to the stipulations, Mr. Baudoin believed he was only obligated to work for eight (8) hours per day under his contract as maintenance manager. It was his belief that any additional work time was to be compensated by the accrual and use of comp time. The school board's policy was that management personnel did not accumulate comp time.
Mr. Baudoin became maintenance manager on December 20, 1991. Six (6) months prior to this he had 158.75 hours of accrued comp time; this translates into 19.84 days. It was also stipulated that in January, 1994 Mr. Baudoin had 25 hours accumulated comp time and 3.5 hours accumulated comp time in June, 1994. This shows that the school board continued to allow Mr. Baudoin to accumulate and use comp time even after he became management personnel.
The court is of the opinion that the actions of the board in allowing Mr. Baudoin to continue to accumulate and use comp time after he became management personnel justified his expectation that he could continue to do so. Accordingly, the 73.5 days of annual leave that was of record at the time of his retirement from the school board will not be adjusted for the use of comp time by Mr. Baudoin.
The court finds that Mr. Baudoin is entitled to be paid wages for 73.5 days at the rate of $150.17 per day. Plaintiff also seeks awards for attorneys fees and damages. When back wages are awarded attorneys fees must be granted. LeDoux v. Bay State Management Corp., 499 So.2d 945 (La.App. 3 Cir.1986); Berteau v. Wiener Corp., cited above. Accordingly, Mr. Baudoin is awarded attorneys fees.
With regard to damages an employer is not liable for penalty wages unless its actions are shown to have been motivated through bad faith or the employer is found to have acted in an arbitrary or capricious manner. Jones v. Hebert & LeBlanc, Inc., 499 So.2d 1107 (La.App. 3 Cir.1986). Plaintiff did not prove that the defendant acted in such a manner as to justify the imposition of penalty wages and none are awarded.
All costs are to be paid by defendant.
Defendant's Exhibit 2, List Of Retiriees With Accumulated Annual Leave On The Books Upon Retirement Or Resignation (we note that the exhibit is silent as to the disposition of the leave), shows Mr. Baudoin with 73.5 hours of unused leave. Hence, defendants cannot raise any argument that any portion of this time was compensatory time, and the trial judge was correct in his conclusion that plaintiff had 73.5 hours of leave due.
In Landry v. Pauli's Inc., 496 So.2d 431, 432-33 (La.App. 5 Cir.1986); writ denied, 500 So.2d 428 (La.1987) our brethren of the fifth circuit, observed the following:
Under the provisions of LSA-R.S. 23:631 a resigning or discharged employee is entitled to recover vacation pay accruing prior to his discharge, Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.1982), unless the employer's established policy precludes compensation for unused vacation days. See Howser v. Carruth Mortgage Corp., 476 So.2d 830 (La.App. 5th Cir. 1985).
(Footnote omitted)
At the time of the Landry case there does not appear to have been any Louisiana Supreme Court case addressing these issues. Subsequently, the Louisiana Supreme Court in Knecht, 591 So.2d 690 at 695 addressed the question of public employees right to compensation for accrued but unused compensatory leave. In deciding that issue the court, applying the principles of our Civil Code, stated the following:
Nearly every state has determined, using precepts similar to our civilian principles, *1319 that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit.... Courts have applied this rule to the governmental employer in the same manner that it applies to the private employer, rejecting the argument that a governmental employer bestows benefits on its employees subject to the employer's whim. [Citations omitted.]
* * * * * *
After the passage of the Fair Labor Standards Act, 29 U.S.C. 201, et seq., and the numerous state labor statutes, only sparse litigation occurred under state contract law regarding the rights of employees to overtime and compensation for services rendered. See C. Bakaly & J. Grossman, The Modern Law of Employment Relationships Sec. 6.8 (1991). A few courts have been confronted with such issues, however, and have used contract principles to determine the rights of employees and employers. For example, our First Circuit Court of Appeal concluded that a governmental employer's policy of granting paid leave for overtime, if well-known and routinely followed, constitutes a legally enforceable contract with the employees subject to it. Jones v. City Parish of East Baton Rouge, 526 So.2d 462 (La. App. 1st Cir.1988). Other decisions have held that such benefits as paid vacation are vested in the employee as a form of additional, deferred compensation and not a gratuity or gift, so that a terminated employee who has accrued vacation time under an implied contract with her employer is entitled to her wages for that time. Suastez v. Plastic Dress-up [Up] Co., 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122 (1982); Valeo v. J.I. Case Co., 18 Wis.2d 578, 119 N.W.2d 384 (1963). See also Wil-Low Cafeterias, 111 F.2d 429, 432 (2d Cir.1940) (Hand, J.). If an employee is promised an hour of paid leave in return for an hour of overtime work for which he received no pay in wages, logically the paid leave is a form of deferred compensation, in lieu of wages. Under basic contract principles, once the services are rendered, the right to receive the promised remuneration vests. Suastez, supra. [Emphasis ours.]
It was stipulated that, if called, the Superintendent of the VPSB would testify that unwritten policies of the VPSB are not to pay overtime to management personnel and not to compensate employees who separate from the system for accrued but unused annual leave. However, neither the stipulations nor any evidence introduced established that the alleged policies were well known and routinely followed. Further, it was stipulated that if Mr. Baudoin was called, he would testify that he was never made aware of these policies. As the trial judge pointed out in his ruling, the record shows the defendant continued to allow Mr. Baudoin to accumulate and use comp time after he was elevated to management status. The record does not establish any clear and consistent established policy of the VPSB with regard to compensation for either compensatory or unused annual leave. Additionally, the holding in Knecht makes it clear to us that, under the facts in this case, the policies the VPSB claimed to have in effect, would have been in contravention of plaintiff's rights.
Plaintiff has answered defendant's appeal seeking penalties under La.R.S. 23:632, additional attorney's fees for work necessitated by this appeal, and an order from the court setting an express dollar amount of costs as required by La.R.S. 13:5112.
La.R.S. 23:632 states as follows:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer *1320 or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Additionally, La.R.S. 23:631(B) provides the following:
In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
It is clear that plaintiff's right to payment for his accrued and unused leave was in dispute. The school board felt that it had viable policies which precluded management personnel from accruing compensatory time and mandating all employees forfeit any unused annual leave upon their leaving their employment with the VPSB. There is no allegation that any undisputed wages were withheld. Further, no evidence was introduced that any employee was treated differently. Therefore, the trial judge was correct in refusing plaintiff's request for penalties.
Plaintiff also seeks additional attorney's fees for the work of his attorney necessitated by this appeal. "[W]e observe that an increase in attorney's fees is granted when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of plaintiff's attorney, provided that claimant requests such an increase." Briscoe v. Jerry's Furniture Mart, Inc., 96-139, pg. 13 (La.App. 3 Cir. 6/19/96); 676 So.2d 764, 771-72. We therefore award plaintiff an additional $1,200.00 in attorney's fees.
Finally, we address plaintiff's request that this court set a sum certain in court costs. La.R.S. 13:5112 provides in pertinent part as follows:
A. In any suit against the state or any department, board, commission, agency, or political subdivision thereof, the trial or appellate court, after taking into account any equitable considerations as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party's court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.
The record contains insufficient information to enable us to grant plaintiff's request. Therefore, we remand the case to the district court for the sole purpose of setting a sum certain in court costs due in this case. All said costs, both at the trial level and on appeal, are then taxed against appellant, the Vermilion Parish School Board.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. Plaintiff, Norris Baudoin, is awarded additional attorney's fees of $1,200.00 for his attorney's work on this appeal. The case is remanded for the determination of a sum certain in court costs as required by La.R.S. 13:5112.
AFFIRMED AND REMANDED.