503 So.2d 125 (1987)
Edward F. POHL
v.
DOMESTICOM, INC., and Domestidyne, a Foreign Partnership.
No. 86-CA-529.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1987.
Rehearing Denied March 17, 1987.
Writ Denied May 8, 1987.
*126 Alonzo T. Stanga, III, P.L.C., William R. Mustian, III, Metairie, for Edward F. Pohl, plaintiff-appellant.
Rudman, Howard, Laudumiey & Mann, Laurence D. Rudman, Kathryn E. Hill, New Orleans, for Domestidyne, a Foreign Partnership, defendant-appellee.
Before CHEHARDY, C.J., and WICKER and GOTHARD, JJ.
CHEHARDY, Chief Judge.
Edward F. Pohl appeals a judgment that granted only part of his claim for vacation pay and certain expenses allegedly owed *127 him by his former employers, Domesticom, Inc., and Domistidyne, a Foreign Partnership (in which Domesticom is a partner).
In his suit, Pohl asserted the defendants refused to pay him two weeks' accrued vacation pay and to reimburse him certain expense account items; he also sought penalty wages and attorney's fees under LSA-R.S. 23:632. The trial court found Pohl entitled to the two weeks' pay, totaling $1,538.46, and to attorney's fees in the amount of $750, but did not mention the other items. On appeal, Pohl asserts the trial court erred in failing to award the statutory penalty of 90 days' wages (which would amount to $13,845.00) and the expense account reimbursement in the amount of $219.78.
The plaintiff was employed as chief financial officer of Domesticom, Inc., from August 1982 until he resigned on October 4, 1984; a portion of his salary was paid by Domestidyne. According to Pohl, when he was hired the company president, Stuart Levin, told him he would be entitled to two weeks' paid vacation a year, with no time constraints on when it was to be taken. During his two-year employment with the company, Pohl used no vacation time; on the day he resigned, he requested payment of four weeks' accrued vacation time in addition to the regular salary due him.
Levin was infuriated by Pohl's resignation because there were major financial negotiations pending in which Pohl was to have taken part. Levin specifically instructed the company comptroller not to pay any vacation benefits. Despite Levin's instructions, several days later the comptroller issued Pohl a check for two weeks' vacation. Pohl filed this suit to recover the additional two weeks.
At trial, Pohl testified as follows: On his last day of work, he told Timothy Claiborne, the comptroller, to prepare a check for four weeks' vacation pay; he had spoken to Claiborne about this the day before. Claiborne informed Pohl he had received instructions from Tracy Heinlein, the vicepresident, to pay Pohl only two weeks' vacation. Pohl discussed the matter with Heinlein, who told him, "`I know we only owe you three weeks at most.'" Thereafter Pohl spoke to Levin, who tried to convince him to stay with the company. Levin told Pohl that if Pohl went to New York and the deal went through, Levin would make sure Pohl was paid for all his four weeks' vacation.
Levin testified he had not specifically discussed vacation when Pohl was first hired. Levin asserted there was no specific company policy regarding vacation for executives; they took time off at their own discretion whenever their workload permitted. In fact, he said, the workload was so heavy and the pressures so intense that company executives worked long hours and seldom took time off.
Levin testified that when he realized Pohl intended to resign, he instructed the comptroller, "`Do not pay [Pohl] any vacation, there's no way I'm going to pay him vacation.'" Levin stated,
"We had a general policy, okay, of two weeks vacation, but that was for employees. I had no policy for anybody that upped and quit on me.

* * * * * *

For anybody that upped and quit on me, I had no policy for vacation. There was no vacation for that. There was  the policy was, in my opinion, if they quit, and especially under adverse circumstances where they just walked out, they weren't entitled to a vacation." (Emphasis added.)[*]
Neither Domesticom nor Domestidyne had any written policies regarding accrual of vacation pay. Claiborne testified that, after consulting Heinlein, he decided to pay Pohl for two weeks' vacation by consulting the corporate manual of Microdyne Corporation. (Microdyne and Domesticom were partners in Domestidyne.) The Microdyne policy allowed employees to accrue vacation leave from one year to the next, up to *128 a maximum accrual for 18 months of employment. Claiborne had followed the Microdyne vacation accrual policy before in dealing with terminated employees, but had never had to deal with an executive-level termination.
Under the Microdyne rule, Pohl would have earned two weeks of vacation time for each year he had been employed (a total of four weeks), but could accumulate only three of those weeks. Claiborne knew Pohl had taken some time off to visit an ailing relative, but because the company maintained no attendance records on executives he had no idea how long Pohl had taken. Apparently Claiborne estimated the time at five days and subtracted it from the three weeks' vacation due to Pohl (although the Microdyne manual also allowed employees two days of personal leave per year). Thus he arrived at the two weeks (ten working days) for which he paid Pohl.
Claiborne stated he was aware that the law required payment of final wages within 72 hours after termination and he wanted to assure the company was in compliance. Therefore, he ignored Levin's instructions not to make any vacation payment to Pohl.
The trial judge concluded Pohl was entitled to the additional two weeks, stating in his reasons for judgment:
"There was no written policy on vacation pay. The Court therefore finds that plaintiff was entitled to four weeks of vacation pay because he worked two years and testified he took no vacation. There was insufficient proof to the contrary. Since plaintiff was already paid two weeks vacation pay, judgment is for the remaining two weeks. * * *"
The defendants have not appealed that conclusion; we affirm it without discussion other than to note we agree with the court's finding.
The main issue is whether the defendants were arbitrary and capricious in refusing to pay the benefits. LSA-R.S. 23:631 requires that upon the discharge or resignation of an employee, the employer must pay "the amount then due under the terms of employment * * * not later than three days following the date of discharge or resignation." If the amount due is disputed, the employer must make timely payment of the undisputed portion of the amount due.
Under LSA-R.S. 23:632, any employer who fails or refuses to comply with R.S. 23:631 shall be liable to the employee "either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages." The statute also requires the court to award attorney's fees to the employee if the suit is well-founded.
Vacation pay is considered to be "wages" for the purposes of R.S. 23:631. Tompkins v. Schering Corp., 441 So.2d 455 (La.App. 2 Cir.1983); Draughn v. Mart, 411 So.2d 1188 (La.App. 4 Cir.1982). R.S. 23:632 is a penal statute and must be strictly construed; penalty wages should not be imposed when the employer has an equitable defense. Mondy v. Robin Towing Corp., 441 So.2d 361 (La.App. 5 Cir. 1983). "A good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" permits the court to excuse the employer from the imposition of penalty wages. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555, 557 (La.1978).
The fact that an employee quits a job abruptly without notice to the employer does not justify the employer's withholding payment of the employee's earned wages. Soday v. Mall Snacks, Inc., 374 So.2d 138 (La.App. 1 Cir.1979). A company policy can have no adverse effect on the requirement of prompt payment of earned wages upon termination of an employee. Duhon v. Prof Erny's Music Company, Inc., 328 So.2d 788 (La.App. 3 Cir.1976).
There is no question that Levin's reason for ordering nonpayment of Pohl's vacation pay was arbitrary and capricious. Had payment been denied on that basis, we would be compelled to grant penalty wages. Despite Levin's orders, however, *129 Claiborne attempted to comply with the law. Although problems arose because company policy and records were unclear regarding vacation accrual for an executive such as Pohl, Claiborne did his best to assess accurately the time due Pohl.
As mentioned above, the trial judge made no comment on the issue of penalty wages. Where the judgment is silent on an issue raised by the plaintiff, the appellate court must presume the trial court rejected that demand. Debs v. Sunrise Homes, Inc., 430 So.2d 110 (La.App. 5 Cir.1983), writ denied 437 So.2d 1153. We find no manifest error in the trial judge's denial of penalty wages. Considering Claiborne's efforts to comply with the law, we do not find the corporation was motivated by bad faith or acted unreasonably in denying the additional two weeks' vacation pay. See Mondy v. Robin Towing Corp., supra. Accordingly, we must refuse the claim for penalty wages.
Pohl also seeks reimbursement for unpaid expense account items in the amount of $219.78, on which the judgment was silent. On his last day Pohl issued himself a check in the amount of $500, drawn on Domestidyne's account, for unreimbursed business expenses. He did not submit his expense statements to the company until several months after he left, however, at which time he claimed the company owed him an additional $460.24. By the time of trial, Pohl had reduced that claim to $219.78, citing errors in calculation.
Claiborne disputed the validity of this claim in his testimony, asserting that Pohl actually owed the company $107.45. Accordingly to Claiborne, the items for which Pohl sought reimbursement were either unauthorized expenditures or duplicate claims that had already been paid.
The silence of the judgment on this issue establishes a presumption that the trial court denied the claim. The evidence is insufficient to establish clearly either Pohl's alleged expenses or what was customarily reimbursed to him. We find no manifest error in the trial court's ruling on this point and therefore we cannot award these expenses.
Finally, Pohl prays this court to award him additional attorney's fees for this appeal. Domesticom argues that unless Pohl is successful in the appeal, he should not receive additional attorney's fees, because R.S. 23:632 mandates the fees only for a "well-founded" suit and an unsuccessful appeal is not "well-founded." We disagree.
The purpose of R.S. 23:632 is to encourage workers to sue for unpaid wages and to motivate attorneys to prosecute such suits. Becnel v. Answer, Inc., 428 So.2d 539 (La.App. 4 Cir.1983). The statute does not contemplate splitting the phases of the suit. If a suit under R.S. 23:632 is determined to be well-founded in the trial court, it does not lose that status on appeal simply because the plaintiff fails to recover all the relief he sought. Accordingly, we award an additional $500 for attorney's fees incurred by this appeal, to be taxed as costs against the defendant.
For the foregoing reasons, the judgment is amended to award a total of $1,250 attorney's fees, to be taxed as costs against the defendants. In all other respects the judgment is affirmed. Each party shall pay his or its own costs for this appeal.
AMENDED AND AFFIRMED.
NOTES
[*] The court reporter transcribed the emphasized phrase as "I had no policy for anybody that helped him quit on me," an obvious phonetic mistranslation that makes no sense in this context. Accordingly, we have corrected the obvious error.