707 So.2d 1233 (1998)
Dianne BEARD
v.
SUMMIT INSTITUTE FOR PULMONARY MEDICINE AND REHABILITATION, INC.
No. 97-C-1784.
Supreme Court of Louisiana.
March 4, 1998.
*1234 John R. Madison, Michael A. Stroud, Weiner, Weiss & Madison, Shreveport, for Applicant.
John S. Odom, Jr., Comegys, Jones, Odom, Spruiell & Davis, Shreveport, for Respondent.
VICTORY, Justice.[*]
We granted this writ to determine whether an employer can refuse to pay an employee accrued vacation benefits in accordance with a company policy which states that accrued benefits are forfeited when the employee "abandons his position." We hold such conduct by the employer violates Louisiana Revised Statutes 23:631, 632 and 634 and subjects the employer to the payment of penalties and attorneys' fees.

FACTS AND PROCEDURAL HISTORY
Dianne Beard ("Beard") was employed as a Licensed Practical Nurse by Summit Institute of Pulmonary Medicine and Rehabilitation, Inc. ("Summit") from June 1, 1994 through June 25, 1995. At that time, Summit had in effect a personnel policy that stated that when an employee walks off the job without cause or voluntary resigns without notice, he or she is deemed to have abandoned his or her position. The policy further stated that all employees who abandoned their position would forfeit all accrued benefits. On June 25, 1995, Beard walked off her job at the beginning of her shift and never returned to work. When she requested her accrued vacation pay, totaling $432.00, Summit refused, claiming that she had abandoned her position and therefore forfeited her right to vacation pay under Summit's policy.
Beard filed a petition for unpaid wages, penalty wages and attorneys' fees against Summit under La. R.S. 23:631, 632 and 634. The trial court granted Beard's motion for summary judgment, finding Summit liable for unpaid vacation pay, penalty wages and attorneys' fees. The Second Circuit reversed, holding that an employer's wage forfeiture policy may in some circumstances be permissible if the forfeiture is not caused by the unilateral act of the employer. Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 29,603-CA (La.App. 2nd Cir. 6/18/97) 697 So.2d 621. We granted a writ to consider the correctness of that holding. Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-C-1784 (La.10/17/97), 701 So.2d 1348.

DISCUSSION
The following statutes are pertinent to this matter. La. R.S. 23:631(A)(1)(b) provides:
Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular pay day or no later than 15 days following the date of resignation, whichever occurs first.
La. R.S. 23:632 provides:
An employer who fails or refuses to comply with the provisions of R.S. 23:631 shall *1235 be liable to the employee for 90 days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney's fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Finally, La. R.S. 23:634 provides:
No person, acting either for himself or as agent or otherwise shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employee shall be entitled to the wages actually earned up to the time of their discharge or resignation.
These statutes were "designed to assure the prompt payment of wages upon an employee's discharge or resignation." Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, 622; Mason v. Norton, 360 So.2d 178, 180 (La.1978).

Liability for Accrued Vacation Pay
The lower courts framed the issue in terms of whether the company policy violated La. R.S. 23:634. Summit argues that because Beard was not required to sign a contract providing that she would forfeit her wages if she resigned before the end of the contract period, La. R.S. 23:634 does not apply. However, clearly if an employer may not require an employee to sign a contract providing for forfeiture of wages upon termination or resignation, an employer cannot require an employee to forfeit wages simply by enacting a policy to that effect. Accordingly, the antiforfeiture provisions of La. R.S. 23:634, as well as the provisions of 23:631 and 632, apply to this case.
Initially, we must determine whether Summit violated La. R.S. 23:631 by failing to pay her upon resignation "any amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, ...."
This Court has held that the phrase "any amount then due under the terms of employment... refers to wages which are earned during a pay period." Boudreaux, supra at 622. We held that "only compensation that is earned during a pay period will be considered wages under the statute." Id.
Although this Court has never addressed whether accrued vacation pay qualifies as "wages," every court of appeal that has addressed the issue has held that accrued vacation pay is wages under La. R.S. 23:631. Baudoin v. Vermilion Parish School Bd., 96-1604 (La.App.3rd Cir. 4/2/97), 692 So.2d 1316, writ den., 97-1169 (La.6/20/97), 695 So.2d 1358; Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App.1st Cir. 11/8/96), 683 So.2d 348, 353, writ den., 96-2885 (La.1/24/97), 686 So.2d 864; Macrellis v. Southwest Louisiana Independence Center, 94-1155 (La.App. 3rd Cir. 5/3/95), 657 So.2d 135; Lambert v. Usry & Weeks, 94-216 (La. App.5th Cir. 9/14/94), 643 So.2d 1280, 1281; Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La.App. 2nd Cir.1990); Garrison v. Burger King Corp., 537 So.2d 834, 836 (La. App. 5th Cir.1989); Blankenship v. Southern Beverage Co., Inc., 520 So.2d 440, 441 (La. App. 1st Cir.1988), writ dism., 522 So.2d 574 (La.1988); Pohl v. Domesticom, Inc., 503 So.2d 125 (La.App. 5th Cir.1987), writ den., 505 So.2d 1148 (La.1987); Lee v. Katz and Bestoff, Inc., 479 So.2d 459 (La.App. 1st Cir. 1985); Howser v. Carruth Mortg. Corp., 476 So.2d 830 (La.App. 5th Cir.1985). We agree. When an employer agrees to pay employees for unused vacation time as a condition of their employment, that accrued vacation pay is compensation that is earned during a pay period under Boudreaux. As such, accrued vacation time is an "amount then due under the terms of employment" and constitutes wages under La. R.S. 23:631.
Summit argues that since its personnel policy provides that vacation pay is forfeited when an employee abandons his or her position, which Beard did, that the vacation pay is not due under the terms of employment. However, La. R.S. 23:634 strictly forbids *1236 an employer from requiring an employee to forfeit her "wages" upon resignation and provides that the employee shall be entitled to the wages actually earned up to the time of their discharge or resignation. The terms of Beard's employment were that she would be compensated for any unused vacation time. Because accrued vacation time is "wages," La. R.S. 23:634 prohibits an employment policy or a signed employment contract which requires its forfeiture.[1]
This holding is in line with the vast majority of court of appeal cases that have considered this issue. Baudoin v. Vermilion Parish School Bd., supra (once benefits such as vacation pay have vested, company policy cannot then deprive the employee of the right to these benefits); Barrilleaux v. Franklin Foundation Hosp., supra ("Once an employee's right to vacation benefits has vested, an employer cannot force forfeiture of this earned right."); Soday v. Mall Snacks, Inc., 374 So.2d 138, 140-141 (La.App. 1st Cir.1979) ("The fact that an employee quit her job abruptly without notice to employer does not justify the employer's withholding payment of the employee's earned wages. It is well established that a company policy can have no adverse effect on the requirement of prompt payment of earned wages upon termination of an employee."); Macrellis v. Southwest Louisiana Independence Center, supra (in spite of company policy providing that use of annual leave was permitted only after an employee had been employed for one year, annual leave was still earned during the first year and thus was an "amount then due" under La. R.S. 23:631(A)); Lee v. Katz and Bestoff, Inc., supra (company policy providing that unused vacation is forfeited upon separation of employment is manifestly unjust and invalid under La. R.S. 23:631 and 634 as the unilateral act of the employer prevents the fulfillment of the condition to the employee's receipt of the benefits); Duhon v. Prof Erny's Music Co., Inc., 328 So.2d 788 (La.App. 3rd Cir.1976) (company policy requiring employee to sign form before being entitled to wages is invalid as the statute does not allow the employer's procedures to condition the payment of wages); Hendrix v. Delta Air Lines, Inc., 234 So.2d 93 (La.App. 4th Cir.), writ den., 256 La. 364, 236 So.2d 498 (1970) (company policy of paying terminated employees seven to ten days after discharge could not outrank or invalidate statute requiring sooner payment).
Accordingly, we hold that Summit violated La. R.S. 23:631 and 634 by refusing to pay Beard accrued vacation benefits in the amount of $439.00. Because of the clear wording of the statutes, the court of appeal erred in holding that "a policy which provides for the forfeiture of benefits, which is not controlled by the unilateral act of the employer, may in some circumstances be permissible." The court of appeal also erred in considering the reasonableness of Summit's forfeiture policy as there is no such exception in La. R.S. 23:624.

Liability for Penalty Wages
We now consider whether Summit is liable for penalty wages under La. R.S. 23:632 by virtue of its violation of La. R.S. 23:631. La. R.S. 23:632 provides in part that "[a]n employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee for 90 days wages at the employer's daily rate of pay...." La. R.S. 23:632. While recognizing that this is a "coercive means" to compel an employer to pay an employee within the time limits proscribed by La. R.S. 23:631, we have held that the penalty must be strictly construed and may yield to equitable defenses. Bannon v. Techeland Oil Corp., 205 La. 689, 693, 17 So.2d 921 (1944). We have further elaborated that "a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" permits the court to excuse the employer from the imposition of additional penalty wages. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555, 557 (La.1978).
Summit claims that it should not be assessed penalty wages because it relied on jurisprudence which indicated that, in an appropriate *1237 case, an employer's policy which resulted in forfeiture of accrued fringe benefits (as opposed to actual wages for hours worked) might well be approved. See Potvin v. Wright's Sound Gallery, Inc., supra and Huddleston v. Dillard Department Stores, Inc., 94-53 (La.App. 5th Cir. 5/31/94), 638 So.2d 383. Although there is no evidence in the record that Summit based its decision not to pay vacation benefits on these cases, assuming that it did, this is not a valid equitable defense.
Potvin, a case which held the employer liable for unused vacation pay, merely recognized that two Fifth Circuit cases, Landry v. Pauli's, Inc., 496 So.2d 431 (La.App. 5th Cir. 1986), writ den., 500 So.2d 428 (La.1987) and Howser, supra, had held that the forfeiture of vacation pay was allowed where company policy precluded compensation for unused vacation time. However, unlike in the Landry and Howser cases, Summit's terms of employment allowed employees to accrue unused vacation time and to be paid for it upon termination of employment. It was only after an employee violated certain regulations that "all accrued benefits [were] forfeited" in violation of La. R.S. 23:634. Thus, it was unreasonable for Summit to rely on the Potvin case in refusing to pay the accrued vacation pay, as Summit's policy did not preclude the accrual of unused vacation time.
Huddleston involved a company policy which provided as follows:
Vacation is a benefit and not an earned wage. "Accrued Vacation" is only considered an earned benefit, and payable upon termination, if the employee terminates due to death, retirement, or voluntarily terminates employment by (1) providing a two weeks notice to their immediate supervisor and/or the personnel office prior to termination, and (2) working all hours scheduled during the two week period, or shorter period as determined by management. Employees involuntarily terminated for cause are not eligible for vacation pay.
The Fifth Circuit held that this policy did not violate La. R.S. 23:634 because "the right to be paid for unused vacation does not vest in the employee until such time that the appropriate conditions prior to separation from employment are met...." 638 So.2d at 685. While not ruling on the correctness of this decision, we note that Huddleston is distinguishable in that under Summit's terms of employment, the right to be paid for unused vacation benefits vested as the benefits were earned. Summit's policy attempted to require certain employees to forfeit these vested and accrued benefits at termination of employment.
In allegedly relying on Potvin and Huddleston in refusing to pay vacation benefits, Summit evidently ignored the plethora of other cases cited above holding that a company policy requiring the forfeiture of earned wages or vacation pay violates La. R.S. 23:634. Furthermore, other courts of appeal have held that reliance on an invalid company policy requiring the forfeiture of earned benefits upon certain conditions will not excuse an employer from the imposition of penalty wages. See Brown v. Navarre Chevrolet, Inc., 610 So.2d 165 (La.App. 3rd Cir. 1992); Hendrix v. Delta Air Lines, Inc., supra; Soday v. Mall Snacks, Inc., supra; Duhon v. Prof Erny's Music Co., Inc., supra. We agree. Reliance on an unlawful company policy does not constitute a good faith non-arbitrary defense to liability for unpaid wages.

Liability for Attorneys' Fees
Lastly, Beard alleges that Summit should be assessed attorneys' fees in the amount stipulated by the parties in the trial court, $2,400.00, and requests an increase in attorneys' fees in the amount of $3,500.00, representing fees in connection with legal services rendered on appeal to the Second Circuit and in connection with proceedings before this Court.
La. R.S. 23:632 provides that "[r]easonable attorney's fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed...." Unlike penalty wages, courts do not permit equitable defenses to the award of attorney's fees in the event a "well-founded suit" for wages is filed. supra. This suit is obviously a "well-founded suit" as plaintiff prevailed at the trial court and at this Court. Accordingly, Beard is entitled to attorneys' fees.
*1238 We affirm the $2,400.00 award of attorneys' fees granted by the trial court. In addition, in accordance with the policy of La. R.S. 23:632 of encouraging workers to assert their rights to those wages and motivating attorneys to prosecute those suits to insure that the working people of this state will not be deprived of their earnings, courts must also consider the time spent in preparation of the successful appeal. Accordingly, we award plaintiff an additional $2,600.00 for time spent in defending the appeal to the Second Circuit and in connection with the proceedings before this Court.

CONCLUSION
If an employer employs a person upon the condition that the person will be able to accrue unused vacation time and be paid for it, such accrued vacation time, once earned, is "an amount due under the terms of employment" under La. R.S. 23:631 and also constitutes "wages" under La. R.S. 23:634. As such, La. R.S. 23:634 prohibits the employer, either through an employment contract or policy, from requiring the employee to forfeit these wages for the violation of a company regulation when the employee is discharged or resigns. Accordingly, Summit is liable to Beard in the amount of $432.00 in accrued vacation pay. In addition, reliance on such an unlawful company policy in refusing to pay the employee these earned and accrued vacation benefits does not constitute a valid equitable defense under La. R.S. 23:632 to the imposition of penalty wages. Accordingly, Summit must pay Beard $9,720.00 in penalty wages. As this is a "well-founded suit" for unpaid wages, Summit is liable to Beard for attorneys' fees in the amount of $5,000.00 for work done in the trial court, appellate court and this Court.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the trial court's judgment is reinstated, except that we raise the attorneys' fee award to $5,000.00. All costs are assessed to defendant.
REVERSED AND RENDERED.
KNOLL, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL, J.
KNOLL, Judge, dissenting.
I find that the majority incorrectly applies La. R.S. 23:624, 631(A)(1)(b), and 632 to the facts of this case. While I agree with the majority's legal pronouncements enunciated regarding resignation of employment, I find that the majority errs in equating "resignation," with "abandonment" of employment. For the reasons explained hereafter, I find that the statutes relied upon are inapposite to the undisputed facts of the case which establish that Dianne Beard abandoned her position.
As pertinent herein, the application of La. R.S. 23:632(A)(1)(b) is premised "[u]pon the resignation of any laborer or other employee of any kind whatever...." (Emphasis added). Likewise, La.R.S. 23:624 negates certain contracts by which the employee forfeits wages if discharged or "if the employee resign[s] their employment...." (Emphasis added). Accordingly, it is clear that it is only if an employer refuses to pay wages upon discharge or resignation that the penalty provisions of La.R.S. 23:632 become operative.
In the present case, it is undisputed that Dianne Beard did not resign her position as a licensed practical nurse at Summit Institute of Pulmonary Medicine, Inc. (Summit), a long term acute care hospital. To the contrary, the facts show that Beard walked off the job without reporting to the charge nurse that she was permanently leaving. As shown in the affidavit of Renee Downey,[1] Summit's director of nursing, Beard abandoned her employment on June 25, 1995, when there was a critical shortage of nurses in the critical care unit and this action complicated an already bad situation. On the following day, *1239 Beard stated to Downey that she left because she did not like the aides assigned to her during her shift and acknowledged that she abandoned her position, leaving the shift shorthanded.
Against that factual backdrop, I note that Summit had a human resources policy, concerning "abandonment of position" that applied to Beard. Particularly, Item 4 of the policy states that "[a]n employee will be considered to have abandoned his/her position if he/she walks off the job without cause." Similarly, Item 6 of the policy provides that "[w]hen an employee abandons his/her position, all accrued benefits are forfeited." Although Summit's policy manual states that "[a]bandonment of position is considered a voluntary resignation without notice[,]" it is abundantly clear from contextual analysis that abandonment of position is clearly distinguished from resignation proceeded by notice. The former is subject to the forfeiture of all accrued benefits; the latter is not.
It is evident that there are strong policy reasons for upholding Summit's contractual provisions regarding abandonment of position without notice. As stated in the appellate court decision:
In any health care facility, it is essential to have proper staffing to provide the requisite patient care. An employee who leaves her position without notice severely undermines the employer's ability to give adequate care. The policy's purpose is to protect the patient.
Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 29,603 (La.App. 2 Cir. 6/18/97), 697 So.2d 621, 623.
With this policy in mind, it is clear that Beard's employment was reasonably conditioned on her agreement that she would not abandon her commitment to provide critical nursing care. As such, I find that Summit's inclusion of a penalty provision, i.e., the forfeiture of accrued benefits, well serves this essential public policy and was a valid tool of enforcement. Simply stated, I find that Beard's reprehensible conduct deserved the invocation of the penalty provisions of Summit's human resources policy.
In stark contrast, I find that the majority decision does disservice to this much needed policy, and impermissibly extends clearly stated statutory law as a shield to protect Beard's irresponsible conduct. In my view, while the legislature enacted the statutes at issue to protect the employee's prompt payment of wages, the legislature did not intend to protect the reprehensible conduct of this employee by the enactment of these statutes. Summit is not trying to get out of promptly paying Beard's earned wages; this it has done. Summit is trying to protect itself from an employee abandoning a critical care patient.
I further note that Beard's entitlement to vacation pay was conditioned not only on performing her nursing duties, but also on her agreement not to abandon her position. Accordingly, I do not find that Beard earned her vacation pay, since she failed to fulfill all bargained for conditions of her employment contract with Summit. Therefore, I do not find that Beard's entitlement to vacation pay ever vested.
For these reasons, it is clear to me that although the result of resignation and abandonment are the same, i.e., voluntary termination of employment, the conduct is easily distinguishable. As I point out above, the law protects the employee who resigns their employment; it should not protect one who deserts the employer and the patient who was to be the recipient of critical care. Accordingly, I would affirm the decision of the Court of Appeal, Second Circuit, and remand this case to the district court for trial on the merits. For these reasons, I respectfully dissent.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] The dissent distinguishes between an employee who "resigns" and one who "abandons her position" and argues that La. R.S. 23:632 and 634 are only applicable to an employee who resigns. However, this view is contrary to the personnel policy itself which states that "[a]bandonment of position is considered a voluntary resignation without notice."
[1] This case is presented to us as a decision on a motion for summary judgment urged by Beard. Summit entered this affidavit into evidence in response to Beard's motion for summary judgment.