811 So.2d 212 (2002)
Robert W. HUDSON, Plaintiff-Appellant,
v.
JACKSON PARISH SCHOOL BOARD, Defendant-Appellee.
No. 35,707-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*213 Bobby L. Culpepper & Associates by Bobby L. Culpepper, Teresa C. Carroll, Jonesboro, for Appellant.
Walter E. May, Jr., District Attorney, Douglas L. Stokes, Jr., Assistant District Attorney, for Appellee.
Before NORRIS, STEWART & PEATROSS, JJ.
PEATROSS, J.
Plaintiff, Robert W. Hudson, appeals a judgment of the trial court sustaining Defendant's, the Jackson Parish School Board's, exception of prescription. Mr. Hudson, a former employee of the Jackson Parish School Board, filed suit seeking payment of accrued annual leave more than ten years after his voluntary separation from employment and six years after his retirement from the Louisiana Teacher's Retirement System. For the reasons stated herein, we affirm.

FACTS
Robert W. Hudson was employed by the Jackson Parish School Board between February 1983 and August 1990. In August 1990, Mr. Hudson resigned to accept employment with the Caddo Parish School Board. At all times during Mr. Hudson's employment with the Jackson Parish School Board, the board had a policy in place regarding annual leave, which stated in pertinent part:
The School Board shall grant annual leave to 12-month full-time professional personnel in accordance with the rate specified below: (Period begins upon employment at twelve-month basis and cannot be taken until earned)
First three years 12 days/year (1 day/ month)
Next six years 15 days/year (1 ¼ days/month)
Beginning of tenth year 18 days/year (1½ days/month)
The unused annual leave shall be accumulated (unlimited). Upon termination or retirement, there shall not be any annual leave severance pay.
At the time of his separation of employment from the Jackson Parish School Board, Mr. Hudson allegedly had accumulated 65.25 days of unused annual leave. He was informed at that time that, as per the above-quoted policy, he would not be paid for the unused leave. Mr. Hudson alleges, however, that he was told by the then superintendent of the school board that he would be compensated for the unused annual leave in the form of a credit toward his retirement. Mr. Hudson retired from the school system in 1995, at which time he was informed by the new superintendent of the Jackson Parish School Board that he would not be receiving credit toward his retirement for any unused annual leave accumulated by him prior to his resignation.
On January 22, 2001, Mr. Hudson filed suit against the Jackson Parish School Board seeking compensation for 65.25 days of annual leave.[1] The Jackson Parish *214 School Board responded by filing a Peremptory Exception of Prescription. As previously stated, the trial court sustained the exception and dismissed Mr. Hudson's claims.

DISCUSSION
Mr. Hudson's claim arises under La. R.S. 23:631, which provides in pertinent part:
A. (1) (a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge.
(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.
* * *
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
Paragraph D of 23:631 was added by Act 56 of the 1997 Regular Session of the Louisiana Legislature. Prior to this amendment, there was considerable Louisiana case law which held that accrued vacation time qualified as "wages" or an "amount then due" for the purposes of La. R.S. 23:631. See Baudoin v. Vermilion Parish School Bd., 96-1604 (La.App. 3d Cir.4/2/97), 692 So.2d 1316, writ denied, 97-1169 (La.6/20/97), 695 So.2d 1358; Barrilleaux v. Franklin Foundation Hosp., 96-0343 (La.App. 1st Cir.11/8/96), 683 So.2d 348, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864.
The clear language of La. R.S. 23:631 indicates that Mr. Hudson's claim became exigible after 15 days had elapsed following his resignation and the school board's failure to pay him for his accrued annual leave. La. R.S. 23:631(A)(1)(b). Absent the application of the theory of contra non valentem,[2] as has been urged by Mr. Hudson, therefore, the applicable prescriptive period would have started to run in August 1990 following Mr. Hudson's *215 resignation from the Jackson Parish School Board. La. C.C. art. 3494 provides the applicable prescriptive period:
The following actions are subject to a liberative prescription of three years:
(1) An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board;....
Since Mr. Hudson's claim is based on the proposition that the annual leave which he had accrued prior to his resignation was an "amount then due to him" or "wages" as per La. R.S. 23:631, it is subject to the liberative prescription of three years provided in La. C.C. art. 3494. Again, absent the application of the theory of contra non valentem, Mr. Hudson's claim would have prescribed in August 1993.
Mr. Hudson, however, claims that the superintendent of the school board at the time of his resignation assured him that he would receive credit for the unpaid leave at the time of his retirement from the system. This verbal assurance is contrary to the written policy of the school board quoted above which expressly provided that there would be no annual leave pay at termination or retirement. Nevertheless, we need not reach the question of whether that statement was made or whether it was reasonable for Mr. Hudson to rely on it. Even assuming that the running of prescription was tolled until Mr. Hudson's retirement in 1995, his claim still would have prescribed by the time the suit was filed on January 22, 2001.
We now turn to the issue of the applicability of the doctrine of contra non valentem, which, according to Mr. Hudson, tolled the running of prescription until March 4, 1998, when the supreme court rendered its decision in Beard v. Summit Institute for Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233. In Beard, the supreme court held that an employer is prohibited from requiring forfeiture of an employee's accrued, but unused, vacation time. Mr. Hudson claims he could not have known about his cause of action until the decision in Beard was rendered; and, as such, the doctrine of contra non valentem should apply tolling prescription until that date, thereby making his January 22, 2001, filing timely. We disagree.
The doctrine of contra non valentem recognizes that, in limited circumstances, the running of the prescriptive period should not commence if good cause exists as to why the plaintiff would have been unable to exercise a cause of action when it first becomes exigible. Louisiana courts have generally recognized four different instances in which the doctrine may be applicable:
(1) where there is some legal cause which prevented the court or its officers from taking cognizance of and acting on the plaintiffs actions;
(2) where there is some condition coupled with the contract or coupled with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action; or,
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant, provided such ignorance is not attributable to the plaintiffs willfulness or neglect. See Corsey v. State, Through Department of Corrections, 375 So.2d 1319 (La.1979); Red River Valley Bank v. Home Insurance Company, 607 So.2d 892 (La.App. 2d Cir.1992); Teague v. Scott, 597 So.2d 1060 (La.App. 2d Cir.1992), writ denied, 604 So.2d 972 (La. 1992); Grant v. Carroll, 424 So.2d 389 (La.App. 2d Cir.1982).
*216 It is the last of these instances which Mr. Hudson argues prevented him from filing his suit prior to January 22, 2001. Mr. Hudson argues in his brief that, since neither this court nor the supreme court had directly addressed the issue of whether an employee was entitled to compensation for unused accrued annual leave prior to the decision in Beard, supra, the running of prescription should have been tolled until the supreme court decision was rendered. Mr. Hudson cites as authority for his position the third circuit's decision in Picard v. Vermilion Parish School Board, 00-1222 (La.App. 3d Cir.4/4/01), 783 So.2d 590, writ denied, 01-1346 (La.6/22/01), 794 So.2d 794.
In Picard, the third circuit applied the doctrine of contra non valentem to the claims of 12 different Vermilion Parish School Board employees for unpaid annual leave whose suit was filed more than three years after separating from service. The third circuit reasoned that the viability of such a claim had not been addressed by it or by the Louisiana Supreme Court until the case of Baudoin, supra; and, therefore, the trial court was within its discretion in finding that the plaintiffs could not reasonably have known about their cause of action prior to that decision.
For the following reasons, we decline to extend the reasoning adopted by our learned brethren of the third circuit in Picard, supra, to the facts of the present case. The jurisprudence on the issue of an employer's obligation to compensate its employees for unused annual leave under La. R.S. 23:631 et seq., has been developing for more than two decades. As this court recognized in Potvin v. Wright's Sound Gallery, Inc., 568 So.2d 623 (La. App. 2d Cir.1990), several cases have held that "a company policy cannot force an employee to forfeit a vested right to vacation pay upon the termination of his employment." Potvin, supra, citing Lee v. Katz and Bestoff, Inc., 479 So.2d 459 (La. App. 1st Cir.1985); Draughn v. Mart, 411 So.2d 1188 (La.App. 4th Cir.1982), writ denied, 415 So.2d 944 (La.1982); Berteau v. Wiener Corporation, 362 So.2d 806 (La. App. 4th Cir.1978), writ denied, 365 So.2d 242 (La.1978).
In Lee, supra, a terminated employee sued her employer for unused vacation pay, penalties and attorney fees. The employer had a vacation policy which clearly stated that: "[u]nused vacation is forfeited upon separation of employment or notice of intent to terminate employment. No vacation days will be carried over to the following year." The first circuit held that the policy, which constituted a contract of adhesion, was in violation of La. R.S. 23:634 and, consequently, was an invalid forfeiture clause.
Similar rulings invalidating forfeiture policies have been rendered since Mr. Hudson's retirement in 1995, including Baudoin, supra, cited by the Picard court. In fact, the only line of cases this court's research has revealed that may have suggested to Mr. Hudson that he did not have a cause of action include decisions of the fifth circuit, which has generally allowed the forfeiture of vacation pay, provided the employer had an established policy precluding compensation for unused annual leave. See Landry v. Pauli's, Inc., 496 So.2d 431 (La.App. 5th Cir.1986), writ denied, 500 So.2d 428 (La.1987); Howser v. Carruth Mortgage Corporation, 476 So.2d 830 (La.App. 5th Cir.1985).
The fact that this conflict among the circuits had not been resolved by the supreme court at the time Mr. Hudson's claim first became exigible did not automatically trigger the application of the doctrine of contra non valentem. In addition, and a point we find significant, Mr. Hudson has identified no cases from this court which would have dissuaded him from filing his claim. We are not willing *217 to conclude that a mere conflict in the circuits as to the potential viability of a cause of action is sufficient to warrant invoking the doctrine of contra non valentem.
Further, we note that the focus in determining the applicability of the doctrine of contra non valentem is the factual question of whether the plaintiff could reasonably have known that a cause of action existed. It appears somewhat disingenuous, therefore, that Mr. Hudson argues for the first time on appeal that it was the Beard decision which put him on notice that he had a cause of action. The Beard decision is not mentioned in Mr. Hudson's testimony at the hearing on the exception or in his counsel's argument before the trial court.

CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining Defendant's, Jackson Parish School Board's, Exception of Prescription is affirmed. Costs are assessed to Plaintiff, Robert W. Hudson.
AFFIRMED.
NOTES
[1] Mr. Hudson's petition also sought damages for unpaid wages for work performed by him during the month of June 1984, for which he alleged he was not paid. Mr. Hudson stipulated at the hearing on the exception, and in his brief to this court, that said claim was prescribed.
[2] Contra non valentem agere nulla currit praescriptio is a jurisprudential exception to a prescriptive statute which means that prescription does not run against a person who could not bring his suit. For a thorough discussion of the concept see Corsey v. State, Through Department of Corrections, 375 So.2d 1319 (La.1979).