DRAKE, J.
|2Sonya K. Hess appeals a final judgment of the district court that dismissed her claims for unpaid wages, penalties, attorney’s fees, and court costs. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The primary issue in this appeal concerns the written employee paid time off (PTO) policy of Magnolia Behavioral Healthcare, L.L.C. (Magnolia). In January 2009, Magnolia hired Ms. Hess as a practicing registered nurse (PRN). During the course and scope of her employment with Magnolia, Ms. Hess was later classified as a full-time staff unit nurse, beginning January 31, 2011. She worked 36 hours per week, 72 hours per pay period, earning $30.00 per hour. Ms. Hess acknowledged that she received and reviewed the Employee Handbook and Personnel Policies on January 13, 2009, at the time of her hire.. With regard to PTO, Magnolia’s Employee Handbook policy, titled “Employee Handbook Summary,” provided as follows:
Paid Time-Off
Regular full-time employees will be given the following paid time. This paid time off is a gift.
6 months — 3 years 120 hours
3 years — 5 years 152 hours
5 years — 10 years 184 hours
10 years and up 200 hours
All newly hired regular full-time employees will have a six month waiting period before paid time off may be used. There is no paid time off for part-time employees. Paid time off may be taken in increments of one hour and must be *1185 scheduled at least 2 weeks in advance. This time is a gift and will not be paid upon voluntary or involuntary termination. If you are terminated and you have used more time than you' have earned that amount will be deducted from your final paycheck. Paid time off cannot be carried over each' year and at the end of the calendar year you will' be paid at a rate- of 75% for your unused time. Paid time off may be used the day before or the day after a holiday. To receive Holiday pay, paid Rtime off must be scheduled and approved in advance.' You may not go over 80 hours using your PTO.
Ms. Hess requested PTO for the. week of February 11-15, 2013, to take a vacation.[1] Her PTO was approved by Magnolia’s director of nursing. On February 8, 2013, Magnolia placed Ms. Hess on temporary furlough. Magnolia permanently furloughed Ms. Hess on February 19, 2013, effectively terminating her employment. At the time of her termination, Ms. Hess had accrued 133 hours of PTO. Ms. Hess requested payment, in writing, from Magnolia for her “accrued wages for paid time off,” which totaled $3,990.00.[2] Magnolia refused, contending that PTO is a gift and would not be paid upon termination in accordance with the employee handbook policy on PTO.
On March 17, 2015, Ms. Hess instituted these summary proceedings, seeking the unpaid wages, penalty wages, attorney’s fees, and court costs. Magnolia answered, generally denying the allegations contained in Ms. Hess’s petition.
Thereafter, the matter proceeded to trial. Following trial, the trial court signed a judgment on June 12, 2012, denying Ms. Hess’s petition for wages owed, penalty wages, attorney’s fees, and court courts, and dismissing her claims. From this judgment, Ms. Hess has appealed.

ASSIGNMENT OF ERRORS

Ms. Hess assigns the following as errors bn appeal:
1. The district court erroneously found that Ms. Hess was paid for her vacation time;
2. The district court erroneously found that Magnolia Health < Care had a valid leave policy that “accrued | .vacation time would not be paid upon termination of employment;” and
3. The district court erroneously found that Ms. Hess was not owed payment for previously accrued, requested, and approved paid time off.

LAW AND DISCUSSION

Louisiana Revised Statutes 23:631 provides, in pertinent part:
A. (l)(aj Upon' the discharge of any ■laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday .or no later than' fifteen *1186 days following the date of discharge, whichever occurs first. ;■
[[Image here]]
D. ‘ (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted - to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
Additionally, La. R.S. 23:634(A) provides:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.
| ¿Thus, upon Ms. Hess’s termination, Magnolia was required under La. R.S.- 23:631(A)(l)(a) to pay Ms. Hess “the amount then due under the terms of employment.” Pursuant to La. R.S. 23:631(D), vacation pay was “an amount then due” to Ms. Hess if, according to Magnolia’s stated vacation policy, Ms. Hess was eligible for and had accrued the right to take vacation leave with pay during the current calendar year and if Ms. Hess had not taken or been compensated for the vacation time as of the date of her termination. Furthermore, in the absence of a clear, written policy establishing that vacation time granted by an employer to an employee is nothing more than a mere gratuity and not to be considered an amount due or a wage, accrued but unused vacation time is a vested right for which an employee must be compensated or paid upon discharge or resignation. Williams v. City of St. Gabriel, 2012-1877 (La.App. 1 Cir. 7/30/13), 2013 WL 3958347, at *2 (unpublished) (emphasis added); see also Alumbaugh v. Global Data Sys., Inc., 2008-1281 (La.App. 1 Cir. 12/23/08), 2008 WL 5377673, at *4 (unpublished); Picard v. Vermillion Parish School Board, 98-1933 (La.App. 3 Cir. 6/23/99), 742 So.2d 589, 595-96, writ denied, 99-2197 (La.11/19/99), 749 So.2d 675; and Chapman v. Ebeling, 41,710 (La.App.2d Cir.12/13/06), 945 So.2d 222, 226.

Assignment of Error 1

In her first assignment of error, Mp. Hess argues that contrary to the findings of the trial court, she was not paid for her previously accrued, requested, and approved PTÓ for her vacation week, Ms. Hess contends that she requested and was approved to take PTO for á vacation the week of February 11-15, 2013, and that her PTO was approved prior to her furlough, which occurred on February 8, 2013. Ms. Hess argues that “the current pay period at Magnolia Health are two weeks behind” and because the. checks run behind two weeks, she was not paid for the week of her scheduled vacation. Ms. Hess contends that her final two pay stubs both indicate that she had 133 hours of PTO. Had she been paid for her | (¡vacation week, Ms. Hess alleges her PTO hours would have been reduced accordingly on her final pay stub. Further, Ms. Hess argues that Magnolia’s administrator, Gary Morris, *1187 testified at trial that he .had no evidence that Ms. Hess’s PTO: hours were reduced by the payment of her final check.
■ Magnolia counters that the evidence clearly establishes, as was confirmed by the trial court, that Ms. Hess was paid for the time she was off during the week of February 11-15, 2013. Whether there was some notation of accrued PTO on her final pay stub.that remained unchanged from the previous pay stub is irrelevant, as she did not work, but was paid for the week of February 11-15, 2013,-
A court of appeal may not overturn a judgment of a- trial court unless there is an error of law or a factual finding that is manifestly erroneous or clearly wrong. Morris v. Safeway Ins. Co. of Louisiana, 2003-1361 (La.App. 1 Cir. 9/17/04), 897 So.2d 616, 617, writ denied, 2004-2572 (La.12/17/04), 888 So.2d 872. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm'the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual-basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes -that the finding ⅛ not clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Moss v. State, 2007-1686 (La.App. 1 Cir. 8/8/08), 993 So.2d 687, 693, writ denied, 2008-2166 (La.11/14/08), -996 So.2d 1092. If the trial court’s factual findings are reasonable in light of the record reviewed in its entirety, the Lcourt of appeal may not reverse those findings, even though convinced that, had it been sitting as the trier of fact, it would have, weighed the evidence differently. Smegal v. Gettys, 2010-0648 (La.App., 1 Cir. 10/29/10), 48 So.3d 431, 435.
The record contains four of Ms. Hess’s check stubs; which are as follows: .
Pay ' ■ Hours Number Date. Period. Paid PTO 12-23-12 to
25339 1-1-13' 1-5-13 72 13 1-6-13 to 1-
25502 1-25-13 ■ 19-13 72 133 1-20-13 to 2-
25661 2-8-13 " 2-13 72' ' 133 2-3-13 to 2-
25799 2-22-13 16-13 72 133
' The- record shows that Ms. Hess worked 36 hours per week, or 72 hours per pay period (two weeks). On February 8, 2013, Ms. Hess was placed on furlough, and then she was.permanently furloughed on February 19, 2013. Ms. Hess’s last pay stub, 25799, which covered the pay period February 3-16, 2013, indicates that she was paid for 72 hours, or two weeks of work; however, as established by the record, Ms. Hess did not work the week of February 11-15, 2013, the second and- final week of that last pay period, because she was furloughed. The trial court- found that Ms. Hess was paid for the entire pay period, including the'week she did not work, because Magnolia paid her for the PTO she had previously requested in order to take a vacation. It is unclear why Ms. Hess’s PTO hours were not reduced at the bottom of her "last pay stub, but the evidence clearly indicates that she was paid for her requested PTO. Based on our review of the record, we cannot say the factual finding of the trial court was clearly wrong. Therefore, this assignment of error is without merit. , ■

*1188
Assignments of Error 2 and 3

In her final two assignments of error, Ms. Hess argues [¡¡that the trial court erroneously found that she was not owed payment for previously accrued PTO and that the trial court erroneously found that Magnolia had a clear, written policy establishing that PTO was a gift that would not be paid upon termination.
In support of her position, Ms. Hess relies upon the Louisiana Supreme Court case, Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233. In Beard, the employee personnel policy at issue provided that vacation pay was to be forfeited when an employee abandoned her position, which the employee, Ms. Beard, did in that case; however, the terms of Ms. Beard’s employment were that she would be compensated for any unused vacation time. Beard, 707 So.2d at 1235-36. The supreme court held that when an employer agrees to pay employees for unused vacation time as a condition of their employment, that accrued vacation pay is compensation that is earned and as such, accrued vacation time is an “amount then due under the terms of employment” and constitutes wages under La. R.S. 23:631. Beard, 707 So.2d at 1235. Louisiana Revised Statutes 12:634 strictly forbids an employer from requiring an employee to forfeit her wages upon termination or resignation and provides that the employee shall be entitled -to the wages actually earned up to the time of their discharge or resignation. Therefore, because accrued vacation time is “wages,” the supreme court held that La. R.S. 23:634 prohibits an employment policy or a signed contract which required its forfeiture, such as the vacation policy of Ms. Beard’s employer. Beard, 707 So.2d at 1236.
Ms. Hess contends that the trial court “admitted” that it was the policy of Magnolia to forfeit accrued vacation time upon termination of employment, and relying on Beard, argues that such a policy is a violation of law because her 133 hours of “accrued vacation time” is an earned wage due to her.
In its reasons for judgment, the trial court stated:
Gerry Morris testified that the hospital’s vacation or paid time off (‘PTO’) policy, which is contained in the ‘Employee Handbook Summary’, provides that PTO ‘is alsgift and will not be paid upon voluntary or involuntary termination.’ Morris, as well as plaintiff, testified that when plaintiff was hired in 2009, she acknowledged she had received and reviewed the Employee Handbook and Personnel Policies, which included the provision that PTO is a gift and will not be paid upon termination. Morris testified that this had been the hospital’s policy since 2008.
In Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 707 So.2d 1233 (La.1998), the Louisiana Supreme Court held:
‘If an employer employs a person upon the condition that the person will be able to accrue vacation time and be paid for it, such accrued vacation time, once earned, is ‘an amount due under the terms of employment’ under La. R.S. 23:631 and also constitutes ‘wages’ under La. R.S. 23:634’[.]
In the case before this Court, Magnolia did not employee [sic] plaintiff upon the condition that she would be paid for accrued vacation time. It is undisputed that Magnolia’s PTO policy provided at the time plaintiff was employed and at the time she was terminated that ‘paid time off is a gift’ and ‘will not be paid upon voluntary or involuntary termination.’ In Huddleston v. Dillard Department Stores, Inc., 638 So.2d 383 (La. *1189 App. 5 Cir.1994), the Court recognized that unused vacation pay is considered wages unless the employer’s policy precludes such payments. The employer’s policy in the Huddleston case, like Magnolia’s policy in this case, provided at the time of plaintiffs employment that ‘employees involuntarily terminated are not eligible for vacation pay.’ Id. at 384. Accordingly, the Court held that the employer’s policy did not violate any of the provisions of La. R.S. 23:631-634.
This Court finds that the facts and evidence support that Magnolia had a clear and unambiguous PTO policy that plaintiff had knowledge of at the time of her employment which was that accrued vacation time would not be paid upon termination of employment. Plaintiffs pay check dated February 22, 2013 shows that plaintiff was paid for the vacation days she requested, even after she was placed on temporary furlough. She was not paid for any time after her requested PTO, as her furlough became permanent on February 19, 2013. Defendant’s PTO policy clearly stated PTO is a ‘gift’ and would not be paid to an employee upon termination of employment, therefore the plaintiff is not entitled to any wages owed, penalties or attorneys fees under La. R.S. 23:631-634.
|1fAfter a thorough review of the record and applicable jurisprudence, we agree with the trial court. There is a clear, written policy establishing that PTO at Magnolia is a “mere gratuity.” A gratuity is something “acquired or otherwise received without bargain or inducement,” “given freely or without recompense,” or a “gift.” Black’s Law Dictionary, 631 (5th Edition). Magnolia’s policy did not speak in terms of eligibility for and accrual of vacation time. Contra, Alumbaugh, 2008 WL 5377673, at *5-6 and Kately v. Global Data Systems, Inc., 2005-1227 (La.App. 3 Cir. 4/5/06), 926 So.2d 145, 149 (provision in employee vacation policy did not qualify as clear, written policy establishing that vacation time granted by employer was a “mere gratuity” and not to be considered an amount due or a wage, where vacation time off.policy provided that eligible employees would accrue vacation time off at a certain rate). In the case before us, Magnolia’s employee PTO policy expressly stated that paid time off, for vacation, or otherwise, was a gift. Additionally, in a December 19, 2008 memo to all employees, Magnoliá’s administrator, 'Gerry Morris, reiterated that “PTO' is a gift and should not be misued.” Accordingly, Ms. Hess’s unused PTO was not an amount then due under the terms of employment, or a wage for which Ms. Hess should have been paid under La. R.S. 23:631 upon the termination of her employment with Magnolia. Therefore, the trial court correctly denied her claims.

DECREE

Based on the foregoing, the June 12, 2012 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Sonya K. Hess.
AFFIRMED.

. In her affidavit, Ms. Hess states she requested PTO for the week beginning Monday, February 10, 2013. Further, she states she was placed on temporary furlough beginning Friday, February 7, 2013. However, according to the official calendar, February 10, 2013 was a Sunday, not a Monday, and February 7, 2013 was a Thursday, not a Friday. Ms. Hess’s work schedule was Tuesday-Friday of each week,

. $30.00 per hour x 133 hours = $3,990.00.