[J-87-2020] [MO: Wecht, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA,

        Appellee

        v.

JOSHUA WARDLAW,

        Appellant

:  No. 15 WAP 2020
:
:  Appeal from the Order of the
:  Superior Court entered December
:  12, 2019 at No. 1716 WDA 2018,
:  quashing the appeal from Order of
:  the Court of Common Pleas of
:  Allegheny County entered
:  November 5, 2018 at No. CP-02-
:  CR-0013708-2016
:
:  ARGUED:  October 21, 2020

**DISSENTING OPINION**

**JUSTICE DONOHUE**                     **DECIDED:  APRIL 29, 2021**

My learned colleagues in the Majority present a compelling argument that the term "awarded" usually contemplates a benefit conferred upon request.  But that usage is by no means universal as the term is readily understood to encompass something that the recipient neither wanted nor requested.  In context of this dispute, where the trial court ordered a mistrial based on the jury's acquittal of the attempted homicide counts and failure to reach a verdict on the remaining charges, I would hold that a new trial was "awarded" in lieu of granting Wardlaw's objection to the mistrial.  Additionally, the Majority's assertion that Wardlaw has another avenue to litigate his claim that the Commonwealth failed to present sufficient evidence at his first trial is a remedy that exists only in theory.  Rule 311(a)(6) is the only mechanism available for Wardlaw to present his claim because the United States Supreme Court holds that the government's asserted

failure to present sufficient evidence at trial does not implicate double jeopardy when the trial court declares a mistrial. Thus, Rule 311(a)(6) provides a remedy that otherwise would not exist. We should employ the interpretation of its language that gives effect to its purpose.

**I.**

As the Majority explains, neither party has offered a textual analysis of the plain language. For ease of reference, I reproduce the relevant text.

> (a) **General rule.**--An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:
>
> . . . .
>
> (6) *New trials*.--An order in a civil action or proceeding awarding a new trial, or an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge or where the Commonwealth claims that the trial court committed an error of law.

Pa.R.A.P. 311.

The Majority observes that Rule 311(a)(6)

> is triggered only upon an "award" [and] the question becomes whether the rule applies only to those orders that fulfill a specific request by a party for a new trial or whether a sua sponte declaration of a mistrial, where there is no specific request by a party, also constitutes an order "awarding" a new trial.
>
> . . . .
>
> Per Black's Law Dictionary, the verb "award" means "[t]o grant by formal process or by judicial decree." *Award*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, "award" ordinarily is synonymous with the verb "grant," but only to the extent that these two words logically overlap. "Grant" most often means "[t]o permit or agree to [or] to approve, warrant, or order." *Grant*, BLACK'S LAW DICTIONARY (11th ed. 2019). Typically,

"award" is a ditransitive verb; it indicates that the subject acts upon an object and that another object benefits from the action. In Rule 311(a)(6), "an order" is the subject; "a new trial" is the direct object; and a party to the action is the implied indirect object that receives the benefit of the action. Accordingly, only those definitions of "grant" that contemplate such a beneficiary relationship also serve to define "award."

Majority Op. at 7-9 (footnote omitted).

This analysis effectively ignores the Rule's prefatory language. We could just as easily say that the sentence at issue is: "An appeal may be taken as of right … from an order in a criminal proceeding awarding a new trial[.]" Thus, "appeal" is the subject, "taken" is the verb, and the orders appealed from are the direct objects, i.e., the orders that qualify for an appeal as of right.

Accordingly, I do not find it helpful to view this issue in syntactical terms.[1] And "award" can clearly function as both verb and noun. For the latter usage, there is an

---

[1] The Majority maintains that this interpretation is grammatically unsound because "awarding" functions as an adjective under this structure. Majority Op. at 8 n.6. The Majority misapprehends the significance of my observation in this regard. The Majority finds that "award" contemplates an action that fulfills a preceding request because under Rule 311(a)(6) "an order" is the subject, with "a party to the action … the implied indirect object that receives the benefit of the action." *Id.* at 8-9.

But by examining the "order" as the subject of the relevant sentence, the Majority loses sight of what Rule 311(a) does. It states that "An appeal may be taken from" qualifying orders. The Rule establishes the circumstances in which a party may take an interlocutory appeal as of right from a non-final order. As further discussed in the body of this opinion, focusing on the perceived need for a "beneficiary" relationship with respect to the parties at the trial court level serves to diminish the fact that from Wardlaw's perspective it does not matter how a new trial is "awarded."

Furthermore, nothing in my analysis requires "awarding" to be something other than a verb. Indeed, as noted infra at n.4, the Majority cites a definition of the verb "to award" that includes something that is "needed." By narrowly focusing on whether one of the parties requested a new trial, the Majority loses sight of the fact that the trial judge determined that a new trial was "needed" and hence was "awarded." As a result, Wardlaw may take an appeal from that order.

obvious parallel to arbitration. *See, e.g.*, 42 Pa.C.S. § 7321.25(a) ( "Upon motion made … after the movant receives notice of the award under section 7321.20 (relating to award) or within 90 days after the movant receives notice of a modified or corrected award under section 7321.21 … the court shall modify or correct the award…"). An "award awarding" is perhaps not pleasing to the eye, but it is a perfectly valid phrase. *See, e.g.*, *Duncan v. State, Dep't of Transp. & Dev.*, 615 So. 2d 305, 308 (La. 1993) ("This 'award awarding compensation' element may be satisfied by … ."). A party dissatisfied with an arbitrator's award has still been "awarded" something, even if it is not exactly what the party wanted. The same is true here. Wardlaw wanted the jury to continue deliberating, but instead a new trial was awarded.

Furthermore, the everyday meaning of "awarding" is not limited to something conferred only upon request. As a matter of common parlance, a person can be "awarded" something they do not want. For example, the Nobel Prize website states, "Jean-Paul Sartre, awarded the 1964 Nobel Prize in Literature, declined the prize because he had consistently declined all official honours."[2] The organization lists another recipient who declined the prize: "Le Duc Tho, awarded the 1973 Nobel Peace Prize jointly with US Secretary of State Henry Kissinger." As these examples show, it is readily understood that something can be "awarded" notwithstanding the fact that the recipients did not want it, did not request it, and refuse to accept it. That awards can be conferred (or "awarded") posthumously further demonstrates the point that someone can be "awarded" something without any input whatsoever from the recipient. Therefore, awards

---

[2] *Nobel Prize Facts*, THE NOBEL PRIZE, https://www.nobelprize.org/prizes/facts/nobel-prize-facts.

may be given based purely on circumstances as decided by the entity with the power to award. The new trial awarded here falls into that category: it resulted from the trial judge's power to do so, based on his own opinion, and without reference to what the participants wanted.[3] "[T]rial judges may declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so."[4] *Renico v. Lett*, 559 U.S. 766, 773–74 (2010) (quotation marks and citation omitted).

Thus, I conclude that the language "an order in a criminal proceeding awarding a new trial" when read in conjunction with the prefatory language is ambiguous.[5] It is

---

[3] Responding to this example, the Majority acknowledges that "Outside of the legal realm, one can be 'awarded' that which he or she does not request personally." Majority Op. at 10 n.8. The fact that the ordinary usage encompasses this situation goes a long way towards establishing an ambiguity. 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]").

The Majority additionally observes that in this case "neither of the parties performed any act that merited a conferral of a benefit upon them." Majority Op. at 10 n.8. Furthermore, in the Nobel Prize example a request precedes the act of "awarding," because a qualified person must request that its committee award the Prize. *Id.* These responses overlook the precipitating act that justified the award: the jury informing the judge that it could not reach a consensus on the remaining counts. Based on this act, the judge then assumed the role of both nominator and awarder, serving as the party that "initiates th[e] deliberative process." *Id.* The fact that the only entity with the power to "nominate" and "award" rested in one person is not dispositive.

[4] The Majority cites a dictionary definition of the verb "award" to mean "to confer or bestow as being deserved or merited or needed". *Award*, MERRIAM-WEBSTER ONLINE DICTIONARY. And as the definition of award includes that which is needed, the fact that the trial judge initiated a deliberative process and determined that a mistrial was manifestly necessary, i.e. needed, establishes that a new trial was awarded.

[5] The Majority suggests that our interpretation of the phrase "order awarding a new trial" "will affect the appealability of certain interlocutory orders in civil cases as well." Majority Op. at 18 n.15. The Majority's belief that the same analysis would apply to civil and criminal cases alike is undermined by the fact that the language at issue here applies only where the defendant "claims that the proper disposition of the matter would be an absolute discharge[.]" Pa.R.A.P. 311(a)(6). The language applicable to new trials in a civil case

susceptible to the construction employed by the Majority and it is likewise amenable to the construction that the trial court "awarded" a new trial notwithstanding the fact Wardlaw did not want it and tried to refuse it. *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1073 (Pa. 2018) ("If a statutory term, when read in context with the overall statutory framework in which it appears, has at least two reasonable interpretations, then the term is ambiguous."). I would therefore hold that Rule 311(a)(6) is ambiguous.

## II.

Having concluded that the term is ambiguous, other considerations must be taken into account to determine the intent of the Rule. As with statutes enacted by the General Assembly, we employ the Statutory Construction Act by considering, among other things, the following:

> (1) The occasion and necessity for the statute.
> (2) The circumstances under which it was enacted.
> (3) The mischief to be remedied.

---

does not contain that qualification, and statutory construction principles require a court to presume that the drafters "intended to avoid mere surplusage," *Allegheny Cty. Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (Pa. 2004). Thus, I do not share the assumption that "interpret[ing] the phrase 'awarding a new trial' in the context of criminal proceedings as encompassing both mistrial orders and orders granting a motion for a new trial … would also afford civil litigants an appeal as of right from all orders declaring a mistrial." Majority Op. at 18 n.15.

As the Rule separates civil and criminal cases, and further qualifies criminal cases by reference to "absolute discharge," that language is presumed to serve some purpose. I note that this Court has stated that the purpose of the Rule is to ensure that a defendant does not "stand trial again, if the already completed trial demonstrates his innocence" because to do so would be "a needless hardship." *Commonwealth v. Liddick*, 370 A.2d 729, 731 n.2 (Pa. 1977) (citation omitted). By declaring a mistrial sua sponte over the defendant's objection, the jury did not render a decision on whether the defendant is guilty or not guilty. By permitting an appeal as of right the Rule seeks to prevent the hardship of a second trial where the Commonwealth failed to present sufficient evidence the first time. In this regard, the liberty interests at stake in criminal trials versus civil trials are so disparate that I do not agree that the provisions "concern the same subject[.]" Majority Op. at 18 n.15.

(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c)(1)–(8). *See* Pa.R.A.P. 107 (stating that the statutory rules of construction are applicable to interpretation of the Rules of Appellate Procedure).

The occasion and necessity for the operative language, as well as the mischief to be remedied, are particularly apt considerations. The two are linked because, absent proceeding to the merits of his appeal, the Commonwealth will be permitted to retry Wardlaw **even if** it failed to present sufficient evidence during the first trial. As the Majority recognizes, that is what Rule 311(a)(6) is designed to prevent. Majority Op. at 15 (agreeing that "Rule 311(a)(6) aims to prevent the needless hardship that would arise from retrying a defendant when retrial is in fact barred."). Notably, both the Commonwealth and Wardlaw agree that the Superior Court erred in quashing this appeal.[6]

---

[6] I do not share the criticism of the Commonwealth raised at oral arguments and as reflected in Justice Dougherty's concurring opinion. *See* Concurring Op. (Dougherty, J.) (suggesting that the Commonwealth should be required to inform the Attorney General when it is not in opposition to the defense position). "The prosecutor's duty to seek justice trumps his or her role as an advocate to win cases for the Commonwealth." *Commonwealth v. Chmiel*, 173 A.3d 617, 631 (Pa. 2017) (Donohue, J., concurring). The Commonwealth plainly believes that the just and legally proper result is to allow this appeal. We should not criticize their efforts to seek justice. The Commonwealth's position was not a secret and this Court has, on other occasions, invited the Attorney General to file amicus briefs. *See Commonwealth v. Brown*, 196 A.3d 130, 143 (Pa. 2018) ("In accordance with our invitation to do so, the Attorney General filed an amicus brief.").

Simultaneously, as we noted in *Brown*, a concession of error is not dispositive. However, I stress here that the Commonwealth is not confessing any error. The Commonwealth vigorously maintains that Wardlaw must lose on the merits. Commonwealth's Brief at 12

This policy goal is evident in the history of Rule 311(a)(6). The Superior Court has remarked that the former version was "based on *Commonwealth v. Gabor*, 58 A. 278 (Pa. 1904)." *Commonwealth v. Williams*, 516 A.2d 352, 353 (Pa. Super. 1986). In *Gabor* the appellant was indicted for murder but convicted of manslaughter. However, the verdict was entered and the jury discharged in Gabor's absence. At sentencing, Gabor moved for an arrest of judgment and discharge from custody. "The court refused the motion, but set aside the verdict and ordered a new trial. This action is the ground of the appeal." *Gabor*, 58 A. at 279. The Commonwealth moved to quash, arguing there was not a final judgment. We disagreed, as "the order for another trial is so far in the nature of a final judgment that we think it best to consider and determine the appeal upon its merits." *Id.*; *see also Commonwealth v. Chenet*, 373 A.2d 1107, 1108 n.1 (Pa. 1977) ("We have recently made clear that an interlocutory order denying a motion in arrest of judgment, based on a claim of insufficient evidence, when a new trial has been granted, is appealable.") (citing *Commonwealth v. Liddick*, 370 A.2d 729, n.2 (Pa. 1977)).

I agree with Wardlaw and the Commonwealth that *Liddick* is instructive. In that case, Liddick was found guilty of murder. Following post-trial motions, the court granted Liddick's motion for a new trial but denied his motion seeking arrest of judgment. Cross appeals were taken. We refused the Commonwealth's request to quash Liddick's appeal from the denial of his motion in arrest of judgment.

The Majority distinguishes the case by noting that Liddick requested a new trial. However, that point would appear to be of limited relevance because Liddick was not

---

("[T]he Commonwealth provided extensive analysis as to why appellant should be subject to retrial on the charges for which the jury deadlocked."). The Commonwealth simply believes, as I do, that the Superior Court erroneously quashed Wardlaw's appeal.

appealing the order awarding him a new trial but rather was appealing the court's failure to grant his request for total discharge. The Commonwealth separately appealed from the order granting a new trial, which it is permitted to do per Rule 311(a)(6). *See Commonwealth v. Andre*, 17 A.3d 951, 957–58 (Pa. Super. 2011) (noting that the Commonwealth may appeal as of right an order awarding a new trial when claiming that the court committed an error of law). Indeed, in addressing the Commonwealth's attempt to quash Liddick's appeal, we remarked:

> The Commonwealth seeks to have defendant's appeal quashed on the basis that, new trial having been granted and hence judgment of sentence not yet having been entered, the order below is interlocutory and non-appealable. … '(t)o require such a defendant to stand trial again, if the already completed trial demonstrates his innocence, is a needless hardship.' That observation is particularly apt in this situation where the case is already before us because of the Commonwealth's cross appeal.

*Liddick*, 370 A.2d at 731 n.2 (citation omitted).

Our reference to ameliorating the potential "needless hardship" caused by subjecting a defendant to a second trial as being "particularly apt" because the case was already before the Court suggests that Liddick would have otherwise been entitled to an appeal. The Commonwealth's separate appeal was simply an additional reason to review Liddick's claims beyond the "needless hardship," which itself constituted a sufficient reason to consider the merits of the appeal.

But even setting that point aside, the Majority does not dispute that the mischief to be remedied is ensuring that a defendant is not forced to go through another trial when he or she contends that discharge is warranted. "Undeniably, *Liddick* and *Chenet* support the proposition that Rule 311(a)(6) aims to prevent the needless hardship that would arise

from retrying a defendant when retrial is in fact barred." Majority Op. at 15. This raises two further points.[7]

First, the "needless hardship" exists regardless of how it comes to be that a new trial takes place. By whatever means a mistrial is entered, the defendant ends up being forced to participate in another trial despite a claim that he or she should be discharged due to the prosecution's failure to produce sufficient evidence. I fail to see how it is any less of a hardship when the trial court, over the defendant's objections, declares a mistrial.

---

[7] The Majority is correct to say that a new trial will not necessarily follow a mistrial. *See* Majority Op. at 17 n.14. But that same point applies even if the Commonwealth were to somehow seek and receive a new trial. In this latter circumstance retrial is not a fait accompli as the Commonwealth could decide that a retrial is not worth pursuing for whatever reason. Yet in the latter case the Majority holds that an appeal may proceed under Rule 311(a)(6) because a party requested the new trial, even though the trial may never happen.

Furthermore, I note that the probable result of the Majority's holding is that this provision will apply only where the Commonwealth has requested a new trial. If a defendant requests total discharge but the judge decides that only a new trial is warranted, then the defendant has not been "awarded" anything per the Majority's analysis. And, of course, if the defendant requests a new trial—thereby creating the conditions to permit an appeal under the Majority's interpretation of Rule 311(a)(6)—but does **not** request total discharge, then his appeal will doubtlessly fail: how did the trial court err by giving the defendant exactly what he requested? In that circumstance, the very condition that authorizes the appeal dooms his claim. By receiving what was requested, there is nothing to appeal. As a result, the Majority's interpretation largely renders that part of Rule 311(a)(6) inoperable.

The Majority argues that *Liddick* establishes that the language at issue in Rule 311(a)(6) will continue to have some force because in *Liddick* the defendant sought both a new trial and total discharge. However, *Liddick* did not involve the defendant asserting that discharge was warranted in lieu of the court declaring a mistrial, as Liddick was found guilty. Thus, there was no impediment to Liddick seeking both avenues of relief following his conviction; the new trial simply represented the less preferable option from Liddick's perspective. The same does not apply here, as once the judge stated his intent to declare a mistrial Wardlaw could either consent to the mistrial or object and ask the court to instruct the jury to keep deliberating.

Indeed, to the extent that appellate courts exist in part to provide a check on trial courts, it is counterproductive to allow a trial judge to evade appellate review by declaring a mistrial over the defendant's objections.[8]

Second, the Majority claims that Rule 311(a)(6) "is merely one procedural protection against such injustice. A distinct procedural rule allows for interlocutory appeals for those who claim that double jeopardy bars retrial." Majority Op. at 19. The

---

[8] This is obviously not a suggestion that trial judges would declare a mistrial to prevent a defendant from appealing. But I do not think it is controversial to state that the cases in which a defendant intends to proceed with an appeal under Rule 311(a)(6) are likely to be cases that prompt the court to grant a mistrial sua sponte. Discharge is an extreme remedy and trial judges are, and should be, wary of taking that drastic step.

Relatedly, I do not share the Majority's fear that reversing the Superior Court will result in a torrent of litigation. It will presumably be the rare case where a defendant elects to delay retrial by pursuing an appeal, given that the relevant standard is quite forgiving to the Commonwealth. Additionally, many defendants facing serious charges are likely to remain incarcerated pending appeal and the retrial. Thus, the delays caused by pursuing an appeal and the fact that such appeals will rarely succeed will serve to disincentivize frivolous appeals.

Finally, the fact that few precedents are directly on point is itself probative. Any swell of litigation would have likely happened long ago given that the rule traces its roots to a case decided over 115 years ago. Along these same lines, the parties do not cite *Commonwealth v. Stahl*, 175 A.3d 301 (Pa. Super. 2017), wherein the Superior Court noted, albeit without explication of Rule 311(a)(6)'s text, that the appellant's appeal "from [the] trial court's order denying his motion for judgment of acquittal following the court's declaration of a mistrial after Appellant's trial for rape and related offenses" was properly before the Court. *Id.* at 302. As in this case, "After determining that the jury was hopelessly deadlocked, the trial court declared a mistrial." *Id.* Without further comment or citation, the panel noted, "Under Pa.R.A.P. 311(a)(6), the order denying Appellant's motion for judgment of acquittal was appealable by right." *Id.* at 303. The *Stahl* case did not open the floodgates as the case has been cited only ten times, none of which involved an interlocutory appeal.

Instead of addressing the limited empirical evidence we have, the Majority responds that the Rule is not limited to serious charges or incarcerated defendants, thereby suggesting that this case will result in significantly more appeals. It is true that the Rule applies regardless of the severity of charges, but that has always been the case. Why would we only now see a large increase in litigation? In any event, even if the Majority's predictions would come to pass the solution is to amend the Rule, not ignore it.

Majority points to Pa.R.A.P. 587(b), which permits a defendant to seek dismissal on double jeopardy grounds. The Majority seemingly suggests that Wardlaw could attempt to invoke Rule 587(b) as an adequate substitute for an appeal as of right. *See id.*

However, as the Majority recognizes elsewhere, the United States Supreme Court has held that a double jeopardy claim does not exist where the prosecution fails to present sufficient evidence at the first trial; more precisely, the jury's inability to reach a verdict is deemed a "nonevent" because it is impossible to determine why the jury could not reach a verdict. In *Richardson v. United States*, 468 U.S. 317 (1984), the Court related the procedural history as follows:

> The jury trying petitioner acquitted him of one of several counts, but was unable to agree as to the others. The District Court declared a mistrial as to these counts of the indictment and set them down for retrial. Petitioner moved to bar his retrial, claiming that a second trial would violate the Double Jeopardy Clause of the Fifth Amendment because evidence sufficient to convict on the remaining counts had not been presented by the Government at the first trial.

*Id.* at 318.

The high Court first held that under the relevant statute, 28 U.S.C. § 1291, the District Court's ruling denying the motion to bar retrial was not final and thus had to fall under the collateral order doctrine. This meant that the double jeopardy claim had to be at least "colorable." In a footnote, the Court stated:

> It follows logically from our holding today that claims of double jeopardy such as petitioner's are no longer "colorable" double jeopardy claims which may be appealed before final judgment. A colorable claim, of course, presupposes that there is some possible validity to a claim. **Since no set of facts will support the assertion of a claim of double jeopardy like petitioner's in the future**, there is no possibility that a defendant's double jeopardy rights will be

> violated by a new trial, and there is little need to interpose the
> delay of appellate review before a second trial can begin.

*Id.* at 326 n.6 (citations omitted, emphasis added).

Thus, Richardson had a "colorable" double jeopardy claim only because there was not a definitive high Court ruling on the legal question. But post-*Richardson*, a claim that the prosecution failed to present sufficient evidence is not a colorable claim because the prosecution's failure to present sufficient evidence does not violate double jeopardy. As the high Court has stated in another case, a jury's failure to reach a verdict is deemed a "nonevent." *See Yeager v. United States*, 557 U.S. 110, 120 (2009) ("[F]or double jeopardy purposes, the jury's inability to reach a verdict on the insider trading counts was a nonevent[.]"). How, then, can Wardlaw invoke Rule 587 and present a non-frivolous argument that his retrial is barred under double jeopardy for failure to present sufficient evidence during the first trial?

The answer is that he cannot.[9] Thus, in discerning the drafters' intent in authorizing

---

[9] The Majority observes that Rule 587 could apply under the Pennsylvania Constitution. *See, e.g.*, *Commonwealth v. Johnson*, 231 A.3d 807, 819 (Pa. 2020) ("Before September 1992, Pennsylvania's double jeopardy protections had been viewed as coextensive with those of the Fifth Amendment in light of identical textual and policy considerations.") (quotation marks and citations omitted). However, I view the rule-based right to an appeal as supplying a remedy notwithstanding whether the Pennsylvania Constitution's double jeopardy protections would otherwise require the same.

Furthermore, even if this Court were to hold that the Pennsylvania Constitution offered more protection in this situation than its federal counterpart, the fact that the defendant could theoretically achieve relief through that motion or "in a post-sentence appeal," Majority Op. at 19 n.17, would frustrate the Rule's purpose. The Rule is designed to eliminate the "needless hardship" caused by subjecting the defendant to a retrial. A defendant who successfully persuades an appellate panel that the evidence at the first trial was insufficient and thus retrial was in fact barred under our charter's double jeopardy protections has gone through the ordeal of a new trial, conviction, and sentencing, not to mention the time and expense it takes to prepare for trial and litigate any subsequent

an appeal from "an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge," I would hold that in resolving the ambiguity we must follow the interpretation that gives the language teeth. We should allow this appeal precisely because there is no other viable avenue to present this type of claim. Rule 311(a)(6) permits the defendant to appeal where, as here, he claims he was entitled to total discharge. That language supplies a remedy that would not otherwise exist, and which does not currently apply under Rule 587. The ambiguity should be resolved in favor of the relief requested by both Wardlaw and the Commonwealth and the case should be remanded to the Superior Court to decide the merits of Wardlaw's sufficiency claim. I therefore respectfully dissent.

---

appeal. To say that this Rule is "merely one procedural protection against such injustice," Majority Op. at 19, is true only to the extent that we ignore those hardships.